Personnel Appeals Board
Nos. 2008-105
 2008-107

APPEAL OF VICKY MORTON
(New Hampshire Personnel Appeals Board)

Argued: October 8, 2008
Opinion Issued: November 7, 2008

*State Employees' Association of New Hampshire, Inc.*, of Concord (*Michael C. Reynolds*, general counsel, on the brief and orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Laura E. B. Lombardi*, assistant attorney general, on the memorandum of law and orally), for the State.

DUGGAN, J. The petitioner, Vicky Morton, appeals two decisions of the New Hampshire Personnel Appeals Board (PAB) ruling that: (1) the proper remedy for her layoff did not include reinstatement to her previous position; and (2) that she did not meet the minimum qualifications for the position of Associate Vice President of Academic Affairs. We consolidated the two appeals and affirm.

The record supports the following relevant facts. In July 2007, the New Hampshire Community Technical College System (NHCTCS) notified Morton of her layoff from employment with NHCTCS because it had abolished her position of Program Coordinator, classified as Program Specialist II, at the Keene Center. At the time NHCTCS abolished the position of Program Coordinator and laid her off, there were two other full time Program Specialist II positions within NHCTCS. The position in Littleton was held by an individual with more seniority than Morton. The position in Stratham, though held by an individual with less seniority than Morton, was, as determined by NHCTCS, not actually a Program Specialist II position because it involved grant management. NHCTCS did not offer Morton either position in lieu of layoff. Morton appealed her layoff to the PAB, pointing out that seven part-time employees within her classification had not been laid off.

While the PAB appeal was pending, Morton applied for the position of Associate Vice President of Academic Affairs. The position has two sets of qualifications. First, the position is classified as "Administrator III," which requires seven years of "relevant experience." Second, a supplemental job description (SJD) for the position requires that four of the required seven years of relevant experience be "in a management level position involving

administrative or supervisory duties concerned with program administration, program planning and evaluation or related management experience."

The NHCTCS Human Resources (HR) Coordinator informed Morton that her application had been disqualified because she did not meet the minimum requirements. Morton asked for her application to be reconsidered. The HR Coordinator, as well as a Classification Specialist within the Division of Personnel, reviewed the application. They both found that Morton's experience was not the management level experience required for the position. Morton appealed that decision to the PAB as well.

The PAB held one hearing to decide both appeals and issued separate decisions for each. In its first decision, the PAB ruled that Morton should not have been laid off if there were any positions within the same class filled by less senior employees. The PAB ordered NHCTCS to reevaluate the Program Specialist II position in Stratham, and assign it to Morton if she met the minimum requirements because she was more senior than the current holder. In its second decision, the PAB found that Morton did not meet the minimum work experience requirements to qualify as a candidate for the Associate Vice President of Academic Affairs position. Morton filed motions for reconsideration, which the PAB denied. She then appealed to this court.

On appeal, Morton makes two principal arguments. First, she argues that the PAB erred in determining the remedy for her layoff. She argues the proper remedy under RSA 21-I:58, I (2000) is reinstatement to her prior position as opposed to reassignment to a different position. Second, she argues that the PAB erred in finding she was not qualified for the Associate Vice President of Academic Affairs position because NHCTCS is not permitted to create additional minimum requirements in the SJD.

Our review in this case is governed by RSA 541:13 (2007). As the appealing party, Morton has the burden of proof to show that the PAB decision is clearly unreasonable or unlawful. RSA 541:13. The PAB decision will not be set aside or vacated except for errors of law, unless we are satisfied, by a clear preponderance of the evidence before us, that such order is unjust or unreasonable. *Id.*

We review the PAB's interpretation of statutes and administrative rules *de novo. N.H. Dep't of Envtl. Servs. v. Marino*, 155 N.H. 709, 713 (2007); *State v. Elementis Chem.*, 152 N.H. 794, 803 (2005). In both instances, we ascribe the plain and ordinary meanings to words used, *Appeal of Flynn*, 145 N.H. 422, 423 (2000), looking at the rule or statutory scheme as a whole, and not piecemeal. *See Appeal of Alley*, 137 N.H. 40, 42 (1993). Although we accord deference to the PAB's interpretation, that deference is not

absolute. We still examine its interpretation to determine if it is consistent with the language of the regulation and with the purpose the regulation is intended to serve. *Id.*

I

As to the proper remedy for her layoff, Morton makes two arguments. First, she argues that NHCTCS could not abolish her position or lay her off while there were seven part time Program Specialist II positions within NHCTCS. Second, she argues that the proper remedy for her layoff is to be reinstated to her prior position rather than reassigned to another.

 As to her first argument, although Morton challenged the authority of NHCTCS to lay her off, she did not challenge the authority of NHCTCS to abolish her former position until she filed her motion for reconsideration. Thus, the issue has not been preserved for our review. *See Mt. Valley Mall Assocs. v. Municipality of Conway*, 144 N.H. 642, 654-55 (2000) (party cannot raise an issue for the first time in motion for reconsideration when the issue was readily apparent at the time the party initially filed for relief); *Sklar Realty v. Town of Merrimack*, 125 N.H. 321, 328 (1984) (a party may not be entitled to judicial review of matters not raised at the earliest possible time). Thus, the only question before us is whether the PAB ascribed the proper remedy for Morton's layoff.

Morton's remaining argument breaks into two parts: (1) that the rules do not permit her layoff; and (2) that RSA 21-I:58, I, requires she be reinstated to the abolished position of Program Coordinator. The State responds that even if her layoff was a violation of the personnel rules, the proper remedy is not reinstatement because that position no longer exists. Rather, the State argues, the personnel rules govern only which employee is laid off, not which position is abolished. The State points out that the PAB prescribed the proper remedy in not reinstating Morton to her prior position, but rather ordering a reevaluation of the position in Stratham and whether she could be reassigned there.

We first address the distinction between abolition of a position and the resulting layoff. Layoff is defined as "the complete separation of an employee from the state classified service for an indefinite period by reason of abolition of position, change in organization, lack of work, insufficient funds, or other reasons outside the employee's control . . . ." N.H. ADMIN. RULES, Per 102.34. Thus, under the Personnel Rules, abolition of a position is an event specifically listed in the rules that in turn necessitates a layoff. *See id.* 1101.01(a). Once a position is abolished, the agency must then decide which employee will be separated from the state classified service. In deciding who will be laid off, the agency must follow the procedures of Per

1101.02. That rule states that, once a layoff becomes necessary, "[e]xcept in instances of an individual possessing unique credentials that are necessary for the agency to carry out a legislated mandate, seniority shall govern the order of layoff." *Id.* 1101.02(e). Thus the employee who is eventually laid off is not necessarily the employee who held the abolished position.

Morton argues that under the rules her position could not be abolished and she could not be laid off if there were part time positions within NHCTCS. She relies on Per 1101.02(d), which states that "[n]o permanent employee shall be laid off from any position while there are . . . part time . . . employees serving in the same class of position within the same division of the agency." This conflates the abolition and the later layoff, and we address only the latter. The regulation states that so long as there are part time positions within her class, she cannot undergo a "complete separation . . . from the state classified service." *See id.* 102.34, 1101.02(d). It says nothing about NHCTCS abolishing her position. Thus, once her position was abolished, NHCTCS was required to examine the other Program Specialist II positions and offer Morton one of those positions in lieu of layoff if she is qualified and more senior than its present holder. *Id.* 1101.02(e). This is what the PAB found NHCTCS failed to do, and in turn ordered NHCTCS to make such a determination.

■ As to the proper remedy for the layoff, Morton argues that RSA 21-I:58, I, requires that she be reinstated to the abolished position of Program Coordinator rather than be reassigned. RSA 21-I:58, I, states:

> If the personnel appeals board finds that the action complained of was taken by the appointing authority . . . in violation of a statute or of rules adopted by the director, the employee shall be reinstated to the employee's former position or a position of like seniority, status, and pay.

At the time of her layoff, Morton's position no longer existed. Rather, she was an employee awaiting the NHCTCS decision who would be laid off as a result of the position's abolition. Restoring her to her previous position does not mean reinstatement as Program Coordinator. Rather, it requires a determination of the proper remedy from the moment of the abolition forward. This is what the PAB did. The PAB correctly ordered NHCTCS to evaluate the Program Specialist II position in Stratham and determine whether Morton was qualified, and if so, to offer her that position. Because Morton does not argue that she could be reassigned to one of the seven part time positions in lieu of layoff, and because the PAB did not reach the issue, we need not address it here.

## II

We now turn to whether the PAB erred in finding that Morton did not meet the minimum requirements for the Associate Vice President of Academic Affairs position.

RSA 21-I:42, II (Supp. 2008) requires the Division of Personnel to create a classification scheme "based upon similarity of duties performed and responsibilities assumed so that the same qualifications may reasonably be required for . . . all positions in the same classification." The Division of Personnel gives each position a class specification, which is a "written document containing the official title, basic purpose, characteristic duties, distinguishing factors, and the minimum qualifications of a specific class." N.H. ADMIN. RULES, Per 102.16. The SJD, in turn, "identif[ies] the scope of work, duties, and accountabilities of an agency-level position falling within a specific class." *Id.* 102.59.

Morton argues that state agencies are not permitted to set forth minimum qualifications for a position in the SJD. Morton relies upon the phrase "the same" in RSA 21-I:42, II, which she argues requires all positions within a classification to have the *exact* same minimum qualifications. The State argues that the SJD in this case does not add minimum requirements, but rather explains what satisfies the minimum requirements set forth in the general classification for the position.

We disagree with Morton that RSA 21-I:42, II, mandates that SJD minimum requirements be the exact same as those in the generic class specification. The language of RSA 21-I:42, II, states that classes are created so that the "same qualifications *may reasonably* be required" for all positions. The statute's plain meaning suggests that not all positions within a class will have the exact same qualifications, but rather reasonably similar qualifications. This allows state agencies to group reasonably similar jobs into the same class, but require specific skills for each to ensure the best candidate is hired.

To hold that positions within a classification can require the minimum experience qualification to be tailored for the position is consistent with the statutory framework. To interpret the statute and rules otherwise would lead to an absurd result; we will not interpret a statute to lead to such a result. *See Appeal of N.H. Troopers Assoc.*, 145 N.H. 288, 290 (2000) ("We interpret statutes to lead to a reasonable result."). Various positions within state agencies may have the same classifications and general qualifications, as well as the same basic duties, but the specific nature of those positions can require specialized knowledge or experience.

The education sector provides a good example of why this is necessary. If a college wishes to hire two new professors to teach

mathematics and Russian literature, under Morton's reasoning, the college would not be able to create SJD qualifications for the positions requiring a degree and teaching experience in each respective field. The same might be true in creating an SJD for administrators in the New Hampshire Fish and Game Department and the New Hampshire Banking Department. We cannot interpret the applicable rules and statutes to require such an absurd result. *See Great Traditions Home Builders v. O'Connor*, 157 N.H. 387, 388 (2008) ("[W]e will not interpret statutory language in a literal manner when such a reading would lead to an absurd result.").

We therefore hold that "the same" in RSA 21-I:42, II, does not require the exact same requirements in the SJD and class specification. Rather, the SJD must contain substantially and reasonably similar qualifications as those in the class specification. Morton has not shown such a rule to be unjust or unreasonable. Because the SJD in this case contains substantially the same qualifications as the class specification, we affirm the PAB's determination that it was valid and that Morton did not meet the requirements.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.