Personnel Appeals Board
Nos. 2011-016
 2011-018

## APPEAL OF TIMOTHY ALEXANDER
## APPEAL OF NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES
### (New Hampshire Personnel Appeals Board)

Argued: October 19, 2011
Opinion Issued: March 23, 2012

*Kristin H. Sheppe* and *Michael C. Reynolds*, of Concord, on the brief, and *Mr. Reynolds* orally, for Timothy Alexander and William Harris.

*Michael A. Delaney*, attorney general (*Rosemary Wiant*, assistant attorney general, on the brief and orally), for the State.

HICKS, J. In these consolidated appeals from a decision of the New Hampshire Personnel Appeals Board (board), Timothy Alexander appeals the board's affirmance of his dismissal from employment with the New Hampshire Department of Health and Human Services (HHS) and the State appeals the board's reinstatement of William Harris to his employment with HHS. We affirm the board's decision as to Alexander but reverse its decision as to Harris.

The following facts were recited in the board's decision or are supported in the record. The Sununu Youth Services Center (SYSC) is a secure facility that provides detention, treatment and rehabilitation services for serious, chronic and/or violent juvenile offenders. Juveniles committed to SYSC are in the custody of the Commissioner of HHS. SYSC employs youth counselors to staff the facility twenty-four hours a day. Their primary "function is to provide safety and security while supervising and participating in resident activities, monitoring and supervising resident behavior, and monitoring the residents' treatment goals."

According to the use of force policy applicable to SYSC staff, the use of force is authorized only for "[j]ustifiable self-defense"; to protect a third party, property, or a client from self-harm; to prevent a crime or escape; or to prevent "resident disturbances and to maintain order within the SYSC." Staff are to use force only "as a last alternative after all other reasonable efforts to resolve a situation have failed." Accordingly, the policy prescribes a "Use of Force Continuum" that progresses from the presence of the staff member through successive stages of intervention described as verbal, directional, physical, serious physical and deadly force intervention.

On April 5, 2009, Alexander and Harris were involved in the restraint of a resident at SYSC. Alexander was employed at SYSC as a Youth Counselor III and Harris, a full-time probationary employee, was a Youth Counselor I (Trainee). Youth Counselor Casey Creamer was also involved in the incident, which began, according to Creamer, at breakfast that morning. Creamer's incident report indicated that the resident responded rudely when Creamer questioned whether he had permission to sit somewhere other than his assigned table. Creamer informed the resident that he would

have to go to his room when they returned to the residential unit. The resident responded disrespectfully under his breath and later refused to go to his room despite repeated instructions from Creamer. The board's decision notes that a "video clip" of the incident "shows the verbal confrontation between Casey Creamer and [the resident] beginning at approximately 07:00:46 a.m." "[A]t 07:00:49 a.m., while speaking to the resident, Mr. Creamer reached out to [the resident] and made the first physical contact. The resident can be seen stepping back and pulling away from Mr. Creamer."

> The video . . . [then] shows Mr. Alexander entering the unit at 07:00:58 a.m. . . . By 07:01:01 a.m., three seconds after entering the unit, Mr. Alexander had already closed the distance of approximately 30 feet between the doorway to the unit and the area near the table where Mr. Creamer, Mr. Harris, and [the resident] were standing. A second later, the video shows Mr. Alexander reaching forward and pushing the resident from behind. A second later, the video shows the resident on the floor following what was described [by Alexander and Creamer] as a "one-arm takedown" [performed] by Casey Creamer.

Following an investigation of the incident, Alexander and Harris were terminated from employment at SYSC. Alexander's termination letter stated the grounds for dismissal as endangering "the safety of [a] resident . . . by using excessive force, said force constituting Class II Abuse . . . , in that [he] abruptly and without warning, approached [the] resident . . . and forcefully pushed him from behind causing him to fall to the ground." The letter noted that Alexander's "actions also violated posted or published agency policies, the text of which warns that violation of same may result in dismissal." Harris, in turn, was dismissed for: "failure to meet the work standard as a probationary employee" in that he: (1) failed "to immediately report to [his] supervisor, Bureau Chief, or designee, the Class II abuse" of the resident by Alexander; (2) failed to complete a written incident report; and (3) during the investigation of the incident, he "did not conduct [himself] with honesty and [was] not truthful in [his] account of the incident."

Alexander and Harris appealed their dismissals to the board. The board denied Alexander's appeal and granted Harris's appeal in part. These appeals followed.

Our standard of review of the board's decision as to Alexander, a permanent employee, is governed by RSA 541:13 (2007). *Appeal of Morton*, 158 N.H. 76, 78 (2008). As the appealing party, Alexander "has the burden of proof to show that the [board's] decision is clearly unreasonable or

unlawful." *Id.* We will not vacate or set aside the board's decision "except for errors of law, unless we are satisfied, by a clear preponderance of the evidence before us, that such order is unjust or unreasonable." *Id.* The board's "findings of fact are deemed *prima facie* lawful and reasonable." *Appeal of Murdock,* 156 N.H. 732, 735 (2008). Its interpretations of statutes and administrative rules, however, are reviewed *de novo. Morton,* 158 N.H. at 78.

We treat the State's appeal of the board's decision as to Harris, a probationary employee, as a petition for a writ of certiorari. *Cf. Appeal of Tamm,* 124 N.H. 107, 110 (1983) (appeal by probationary employee). "The scope of review on a petition for a writ of certiorari is confined to a determination whether the [board] acted illegally in respect to jurisdiction, authority or observance of the law, thereby arriving at a conclusion which could not be legally or reasonably made." *Id.* at 110-11 (quotation omitted).

We will first address Alexander's appeal. He argues that: (1) the board unlawfully upheld his dismissal on a different factual basis from that stated in his termination letter; (2) the facts found by the board do not warrant termination; (3) he should be reinstated because SYSC failed to comply with the personnel rules; and (4) he is at least entitled to a new hearing because the board violated several statutes and, along with SYSC, violated his rights to due process.

Alexander first argues that the board erred by upholding his dismissal on a different factual basis from that relied upon by SYSC in his letter of termination. As previously noted, Alexander's termination letter, written by John F. Duffy, Bureau Chief of Residential Services at SYSC, stated that he used excessive force "in that [he] abruptly and without warning, approached [the] resident . . . and forcefully pushed him from behind *causing him to fall to the ground.*" (Emphasis added.) Alexander asserts that the board "did not agree with Duffy's version of the facts" and that the board found "that [he] did not push the resident to the ground." It is not entirely clear whether the board made a finding that the resident was taken down, thereby rejecting the assertion that he fell as a result of Alexander's shove, or whether the board merely recounted witness testimony to that effect. Nevertheless, we will assume, *arguendo,* that the board made such a finding.

Alexander argues that under the personnel rules, only the appointing authority, not the board, had the power to terminate him. He contends that "[b]y upholding [his] dismissal on alternative grounds, the Board essentially made its own determination about [his] actions and decided to terminate [him]. The Board is not permitted to take that action." The State,

citing New Hampshire Administrative Rule, Per-A 207.12(b), counters that the board's review is not limited to the information stated in the termination letter.

Rule 207.12(b) provides:

> (b) In disciplinary appeals, including termination, . . . the board shall determine if the appellant proves by a preponderance of the evidence that:
>
> > (1) The disciplinary action was unlawful;
> >
> > (2) The appointing authority violated the rules of the division of personnel by imposing the disciplinary action under appeal;
> >
> > (3) The disciplinary action was unwarranted by the alleged conduct or failure to meet the work standard *in light of the facts in evidence*; or
> >
> > (4) The disciplinary action was unjust *in light of the facts in evidence*.

(Emphases added). We agree with the State that the board may consider all of the evidence before it. We note, however, that the board's task, in a review pursuant to Rule 207.12(b)(3), is to determine whether "[t]he disciplinary action was unwarranted *by the alleged conduct* or *failure to meet the work standard.*" (Emphases added.)

Alexander's termination letter alleges that he "endangered the safety of a Sununu Youth Services (SYSC) resident . . . , by using excessive force in pushing him and causing him to fall to the ground." The letter reiterates four more times that Alexander's use of force caused the resident to fall. In addition, the letter states that Alexander "also failed to determine, prior to pushing [the resident], whether the two staff members standing beside him needed [his] assistance and failed to attempt to de-escalate the situation prior to using force. Failure to adhere to this policy *is also grounds for dismissal.*" (Emphasis added.) Thus, the agency cited alternative grounds for Alexander's dismissal, either of which was alone sufficient.

 The board acknowledged the dual grounds for termination, and sustained both. Since the latter ground did not depend upon the finding, allegedly rejected by the board, that Alexander pushed the resident *to the ground*, we conclude that the board did not independently terminate Alexander on an "alternative theory" not stated in his letter of dismissal.

Alexander next argues that the facts found by the board "do not represent a scenario which would permit termination." In particular, he challenges the board's conclusions relating to the use of force continuum. The board stated:

> The use of force policy (State's Exhibit 1) clearly describes the steps staff are required to take, including physical presence, verbal intervention, directional intervention, and physical intervention before the staff person can engage in "serious physical intervention" or "deadly force." By his own admission, Mr. Alexander did not attempt to use any of the lesser forms of intervention before engaging in what the Board would consider an excessive use of force.

> It is important to note that there were two trained staff members on the floor talking face to face with the resident when Mr. Alexander burst into the room, approached the resident from behind and shoved the resident without warning. Mr. Alexander described his actions as "positional movement" of the resident, asserting that it was the next reasonable step when presence and verbal intervention failed. According to the policy, however, the next step in the force continuum is "directional intervention," which the policy defines as "a physical cue to follow staff directions. Touching the client and moving with them in an escort position is intended to move them away from the situation and engage the client in defusing questions." The evidence reflects that Mr. Alexander did not use any physical cue, escort the resident or engage in defusing questions. He simply shoved the resident without warning.

Alexander asserts he saw that "Mr. Creamer had already used a 'physical cue' in an unsuccessful attempt to make the resident comply." He argues:

> The Board emphasizes that the *appellant* did not *himself* use the lower-level interventions, but it cannot possibly be the case that each staff member must individually perform each step on the continuum. If that were the case, a staff member approaching a clearly impending assault (as the appellant perceived in this case) would be able to resort only to "presence" before even talking to the resident.

We do not share Alexander's interpretation of the board's decision. The board noted Alexander's claim that his actions were an attempt to move the resident away from the conflict and found that claim unsupported by the evidence. "As a fact-finding tribunal, the [board] was at liberty to

resolve any conflict in the evidence and to accept or reject such portions of the testimony as it saw fit. The [board's] findings and conclusions are entitled to great weight and cannot be set aside lightly." *Desmarais v. State Personnel Comm'n*, 117 N.H. 582, 586 (1977) (quotation omitted). Having reviewed "the record before us, we cannot say that the [denial] of [Alexander's] appeal was unjust or unreasonable." *Id.* (quotations omitted).

Alexander next argues that pursuant to RSA 21-I:58, I (2000), he is entitled to reinstatement without loss of pay because his termination was in violation of New Hampshire Administrative Rule, Per 1002.08(d), which provides, in pertinent part:

> (d) No appointing authority shall dismiss a classified employee under this section until the appointing authority:
>
> > (1) Offers to meet with the employee to discuss whatever evidence which the appointing authority believes supports the decision to dismiss the employee;
> >
> > (2) Offers to provide the employee with an opportunity to refute the evidence presented by the appointing authority . . . .

N.H. ADMIN. RULES, Per 1002.08(d).

Prior to his termination, Alexander received a letter of intention to dismiss, signed by Duffy, requesting a meeting between them "to discuss and view the evidence that supports my belief that you meet the criteria for dismissal from State service as set forth in this letter and to give you the opportunity to refute the evidence." Alexander argues that this offer did not comply with Rule 1002.08(d) because Duffy was not the appointing authority. Testimony before the board revealed that Director William W. Fenniman, Jr. had final authority with respect to hiring and firing at SYSC and Alexander therefore contends that Fenniman was the appointing authority. Alexander asserts that he "was misled about the identity of the decision-maker and was never given the opportunity to meet with the actual decision-maker — Fenniman, who was the appointing authority."

The State argues that Alexander failed to preserve this argument because he failed to raise it in his notice of appeal to the board and the board made no finding on the issue. The record reveals that Alexander first raised the issue in his motion for rehearing to the board.

Alexander counters that "[b]efore the hearing, [he] had reason to believe there were violations of the personnel rules, but did not have the particulars regarding Fenniman's hiring powers and Duffy's lack of authority." That information first surfaced, he contends, at the hearing before the board. He

asserts that "[o]nce [he] had the additional information, he included this information the next time he had a chance to review his argument — in the Motion for Reconsideration."

We conclude that, even assuming Alexander had no access to the information about the appointing authority prior to the hearing before the board, the issue is not preserved. The board heard four days of testimony spread out over more than two months. Fenniman's authority was first discussed on the second day, May 27, 2010. On the third day, June 16, then union chapter president Steven Sage testified that Fenniman consulted him about the Alexander incident, saying "something to the effect of we got this on tape. It's a horrible thing to see. This guy [Alexander] just wrecked this kid, and he's going to be out of here, something to that effect." Sage also testified that when he asked Duffy, at Duffy's meeting with Alexander, who would make the decision to terminate, he was told it was Duffy's decision. Sage stated that he had been "instructed and trained as a [union] steward to ask the question. Secondly, if I ask the question, maybe I'll get where is Director Fenniman. He's the guy that told me I'm going to — why can't I refute anything with him? Why am I not seeing him?" Nevertheless, Sage testified that he was certain that Duffy told him the decision was his, and, although Sage was surprised by that answer, he thought it was "kind of corroborated . . . because [he] never saw Director Fenniman in any of these meetings."

On the fourth day of testimony, July 28, Alexander confirmed that Duffy stated the decision to terminate was his and testified that if he had known Fenniman was actually the decision-maker, he "would have shown [Fenniman] the video again and explained my version of what took place here this day."

Despite having elicited this testimony at the hearing, Alexander's counsel never raised before the board, prior to its September 27, 2010 decision, the argument Alexander now makes in this appeal. Rather, Alexander first made the argument in his motion for reconsideration/rehearing on October 27.

We disagree with Alexander's assertion here that this was "the next time," which we interpret to mean the first time, "he had a chance to review his argument." We acknowledge that the board declined to hear arguments at the close of evidence; however, pursuant to New Hampshire Administrative Rule, Per-A 208.01, Alexander could have moved to add the issue for the board's consideration prior to its decision. That rule provides:

> At any time prior to the issuance of the decision on the merits, the board, on the board's own motion *or on the motion of any party,* shall reopen the record of the hearing to receive relevant, material and non-duplicative testimony, evidence *or arguments*

not previously received, if the board determines that such testimony, evidence or arguments are necessary to a full and fair consideration of the issues to be decided.

N.H. ADMIN. RULES, Per-A 208.01 (emphases added).

By contrast, Rule 208.03 provides, in part:

(a) Pursuant to RSA 541:3, within 30 days after the date of notice of any decision or order of the board, any party to the action or proceeding before the board, or any person directly affected thereby, may apply for rehearing *in respect to any matter determined in the action or proceeding, or covered or included in the order.*

N.H. ADMIN. RULES, Per-A 208.03 (emphasis added); *see* RSA 541:3 (2007). As the State notes, the board "did not make a finding on the issue" of whether Duffy was, or properly acted on behalf of, the appointing authority. Therefore, it was not a proper ground on which to request rehearing. *See* N.H. ADMIN. RULES, Per-A 208.03. Accordingly, we do not consider it a "ground . . . set forth" in that motion for purposes of RSA 541:4. RSA 541:4 (2007) (providing that court will not consider on appeal any grounds for error not set forth in a motion for rehearing to the board). We conclude, therefore, that the issue has not been preserved for our review.

Alexander next argues that "[t]he Board violated [RSA 541-A:31, IV] by denying [him] the opportunity to make a closing argument at the hearing." The State counters that Alexander failed to preserve this issue by neglecting to make a contemporaneous objection at the hearing. We agree. "The general rule is that a contemporaneous and specific objection is required to preserve an issue for appellate review." *Petition of Guardarramos-Cepeda*, 154 N.H. 7, 9 (2006) (addressing preservation of issue before sentence review board). The transcript reveals that Alexander's counsel inquired about closing arguments at the hearing, to which Chairman Wood responded, "We're not going to have closing arguments. We appreciate it. Four days [of testimony] is sufficient." Alexander's counsel did not object. Accordingly, the issue is not preserved.

Alexander next contends that he is entitled to a new hearing because the board violated RSA 21-I:46, IX (2000) by failing to issue its decision within forty-five days of the date of the hearing. We disagree. As RSA 21-I:46, IX implicates no liberty interest and the record reveals no prejudice to Alexander, "we hold that the statute affords no remedy." *Appeal of Martino*, 138 N.H. 612, 616 (1994) (rejecting claim that decision

of compensation appeals board should be vacated because it was not issued within statutorily mandated time limit).

■ We also disagree with Alexander's contention that "the Board's decision reflects either unsupported or very unclear fact-finding on material issues, in violation of RSA 541-A:35." RSA 541-A:35 (2007) requires that "[a] final decision shall include findings of fact and conclusions of law, separately stated." The board's fourteen-page decision includes a review of the evidence and separate conclusion sections as to Alexander and Harris. We hold that the decision complies with RSA 541-A:35. To the extent Alexander claims the board's findings are unsupported by the evidence, his single-sentence argument is either not adequately briefed and therefore waived, *Appeal of Town of Nottingham*, 153 N.H. 539, 555 (2006), or, to the extent it references a previous argument, is addressed above.

Alexander next contends that he was denied due process under the Fourteenth Amendment to the United States Constitution and Part I, Article 15 of the New Hampshire Constitution. Arguing that he had a property interest in his job, he asserts that he "was entitled to procedural due process in the execution of his termination, by both SYSC and the Board." The State asserts that Alexander had no property right in state employment and argues that, in any event, "[d]ue process requires notice and an opportunity to be heard, which Alexander received."

■ "[W]hile property interests are protected under the Federal, as well as the State, Constitutions, they are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 549 (quotation omitted) (addressing takings claim); *see Brown v. Bedford School Board*, 122 N.H. 627, 630 (1982). Alexander has the burden of proving he had a property interest in his employment. *See Krieg v. Seybold*, 481 F.3d 512, 519 (7th Cir. 2007).

■ ■ "In the context of public employment, we have repeatedly reaffirmed that, as a matter of State law, public employment without more, such as a commission of office, does not rise to the level of a protected property right." *Brown*, 122 N.H. at 630. Alexander contends that the collective bargaining agreement (CBA) under which he worked, RSA chapter 273-A, "and the classified system (e.g., RSA 21-I:42-58) . . . provide the 'more' that creates a property interest." He fails to cite a specific provision, however, of either statute, or of the CBA, that creates such an interest. *Cf. Intern. Union Local 737 v. Auto Glass Emp. Cr. Union*, 72 F.3d 1243, 1250-51 (6th Cir. 1996) (finding no property interest in employment where plaintiffs failed to cite specific provision of contract, or other rule or

understanding, that created one). In addition, notwithstanding that Alexander may have been entitled to certain procedural protections and rights of appeal by statute and administrative rule, "a substantive property right cannot exist exclusively by virtue of a procedural right." *Dorr v. County of Butte*, 795 F.2d 875, 877 (9th Cir. 1986); *see Petition of Gorham School Board*, 121 N.H. 878, 881 (1981) (procedural protections of RSA 189:14-a did not create property right in continued employment with school district). Because we conclude that Alexander has failed to meet his burden of showing a protected property interest in his employment with SYSC, we need not further address his constitutional claims, including his claim that the State Constitution affords him greater protection than the Federal Constitution.

We turn now to the State's appeal of the board's decision with respect to Harris. The State argues that the board "exceeded both its statutory and regulatory authority" under RSA 21-I:58, I, and New Hampshire Administrative Rule, Per-A 207.12(a), by reinstating Harris to employment with HHS.

The board stated that "[i]n accordance with pertinent provisions of RSA 21-I:58, I, . . . [it] voted unanimously to have Mr. Harris reinstated, but *without the benefit of back pay, to his position of Youth Counselor Trainee*." The State contends this was error because RSA 21-I:58, I, applies only to "permanent" employees. We agree.

RSA 21-I:58, I, provides, in relevant part:

> Any permanent employee who is affected by any application of the personnel rules . . . may appeal to the [board] within 15 calendar days of the action giving rise to the appeal. . . . If the [board] finds that the action complained of . . . was taken in violation of a statute or of rules adopted by the director, the employee shall be reinstated to the employee's former position or a position of like seniority, status, and pay. . . . In all cases, the [board] may reinstate an employee or otherwise change or modify any order of the appointing authority, or make such other order as it may deem just.

We stated in *Appeal of Higgins-Brodersen*, 133 N.H. 576 (1990), that "[i]n reviewing RSA 21-I:58, it [was] clear to us that the legislature intended to confer upon State employees a specific right of appeal to the Board based upon permanent status." *Higgins-Brodersen*, 133 N.H. at 580.

Harris attempts to distinguish *Higgins-Brodersen*, noting that it concerned a part-time employee and arguing that "probationary employees should not be equated with part-time employees." We are not persuaded.

Our decision in *Higgins-Brodersen* clearly differentiated permanent from probationary, as well as part-time, employees. *Id.* at 580 (noting that "[p]ermanent employees have completed a working-test period and have been recommended for permanent appointment by the proper authority").

We acknowledge that the last sentence of RSA 21-I:58, I, begins with the seemingly expansive introductory phrase, "[i]n all cases." Nevertheless, when interpreting statutes, "we do not merely look at isolated words or phrases, but instead we consider the statute as a whole." *Appeal of Kat Paw Acres Trust*, 156 N.H. 536, 537 (2007) (quotation omitted). Reading RSA 21-I:58, I, as a whole, we conclude that the discretion conferred by the last sentence was intended to be confined to cases arising under that section — that is, appeals by permanent employees. RSA 21-I:58, I.

Harris argues, however, that the State should be estopped from arguing that RSA 21-I:58, I, does not apply to him because his termination letter informed him that he had the right to appeal under that section. We disagree. "[A] party may not assert equitable estoppel to avoid the application of a statute." *Appeal of Stanton*, 147 N.H. 724, 732 (2002) (Dalianis, J., concurring in part and dissenting in part); *cf. Thomas v. Town of Hooksett*, 153 N.H. 717, 722-23 (2006) (rejecting claim of municipal estoppel because reliance upon a representation contrary to statute was unreasonable). We conclude that the board's reliance upon RSA 21-I:58, I, to reinstate Harris was erroneous because that statute does not confer that authority in the case of a probationary employee.

We now examine the board's actual authority in such cases. New Hampshire Administrative Rule, Per-A 207.12(a) provides:

> (a) In probationary termination appeals, the board shall determine if the appellant proves by a preponderance of the evidence that the termination was arbitrary, illegal, capricious or made in bad faith. Allegations that the appellant does not know the reason(s) for the dismissal, or evidence that the appointing authority took no formal disciplinary action to correct the employee's unsatisfactory performance or failure to meet the work standard prior to dismissing the employee, shall not be deemed sufficient to warrant the appellant's reinstatement.

N.H. ADMIN. RULES, Per-A 207.12(a).

Here, the board concluded that "[w]hile [it] did not find the dismissal decision to be arbitrary, illegal, capricious or made in bad faith, [it] believes that the decision to dismiss in this case imposed a more substantial penalty

than the appellant's actions warranted." The State argues that the board erred in exceeding the limits on its authority to review dismissals of probationary employees.

Harris counters that the board "essentially found that [he] had not violated the work standard." We disagree. In its denial of the State's motion for rehearing, the board stated:

> In its September 27, 2010, decision, the Board concluded after considering . . . all the facts in evidence that the Department's decision to dismiss [Harris] was not arbitrary, illegal, capricious or made in bad faith, as the Department believed that [Harris] failed to meet the work standard as articulated in the Department's policies and procedures. However, the Board found, and continues to find, that those policies and procedures may not be evaluated in a vacuum, but must be weighed in practical terms as they are actually applied and observed in the workplace. Having done so, the Board found that [Harris's] work performance did not represent a failure to meet work standards that would justify his dismissal.

We read this not as a finding that Harris met the work standard, but as an assessment of the degree of his failure to meet it. We reach this conclusion in light of the board's findings that "Harris might have used better judgment with respect to reporting the incident," and "Harris should have been more forthcoming during the investigation, and should not have related as independent recollection those details he actually found in another employee's . . . [incident] report." As the State points out, however, under New Hampshire Administrative Rule, Per 1002.02(a), "the discretion to dismiss a probationary employee who fails to meet the work standard" rests with the appointing authority, not the board. "The dismissal of a probationer must not be arbitrary, illegal, capricious or made in bad faith, but the courts will not interfere with a reasonable exercise of discretion by a department head or an administrative official." *Clark v. Manchester*, 113 N.H. 270, 275 (1973) (quotation omitted). Similarly, once the board found that the dismissal was not arbitrary, illegal, capricious or made in bad faith, it was not entitled to interfere with HHS's exercise of discretion in terminating Harris's employment. Accordingly, we reverse the board's decision with respect to Harris.

*Affirmed in part; reversed in part.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.