NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Personnel Appeals Board
No. 2017-0449


APPEAL OF NEW HAMPSHIRE DIVISION OF STATE POLICE
(New Hampshire Personnel Appeals Board)

Argued:  April 17, 2018
Opinion Issued:  September 7, 2018


Milner & Krupski, PLLC, of Concord (John S. Krupski on the brief and orally), for David Appleby.


Gordon J. MacDonald, attorney general (Karen A. Schlitzer, senior assistant attorney general, on the brief and orally), for New Hampshire Division of State Police.


BASSETT, J.  This appeal arises from the respondent's, the New Hampshire Division of State Police (Division), termination of the petitioner, State Trooper David Appleby, based upon the petitioner's abandonment of his extra-duty detail escorting an oversized truck and his conduct in the subsequent investigations of that incident.  The petitioner appealed his termination to the New Hampshire Personnel Appeals Board (PAB), which reinstated him.  The Division now appeals, arguing that the PAB's decision to reinstate the petitioner was unjust and unreasonable because: (1) the standard set forth in RSA 21-I:58, I (2012) does not permit the PAB to substitute its judgment for that of the appointing authority; and (2) the PAB failed to

consider the factors provided for in the applicable personnel rule and relied upon by the Division in reaching its termination decision, including the petitioner's prior disciplinary history. We affirm.

The following facts were found by the PAB, or are otherwise derived from the administrative record. The petitioner was hired by the Division in 1999, and worked as a trooper for over fifteen years. He was terminated in August 2015. During his employment, he served in a number of capacities in addition to his regular trooper duties, including working many extra-duty detail hours. On May 12, 2015, the petitioner worked an extra-duty detail in which he was assigned to escort an oversized truck from Claremont to the Massachusetts border in Plaistow. The truck's departure was delayed due to mechanical problems, and the petitioner became concerned that he would not be able to complete the escort and also arrive on time for his regularly scheduled duties at Troop F, located in northern New Hampshire. After unsuccessfully seeking substitute coverage, the petitioner escorted the truck to exit 7 on Route 101. In order to arrive on time for his regular duties, the petitioner abandoned the detail before the truck reached the Massachusetts border.

After the Division received a complaint that the petitioner had violated rules governing extra-duty details, it initiated an internal investigation. Although the investigating officer found that the petitioner engaged in misconduct by failing to communicate appropriately with dispatch during the escort, he concluded that the petitioner's errors "were based on mitigating circumstances and . . . that no further action was necessary."

Upon review of that report, a superior officer continued to have concerns about the petitioner's conduct, and a further investigation ensued. The officer discovered that the petitioner's time sheets reflected that he left the escort at 10:30 a.m. and began his regular-duty shift at 11:00 a.m. However, E-Z pass records demonstrated that the petitioner drove through the tolls at Hooksett at 11:00 a.m., and did not arrive at Troop F headquarters until two hours later.

During a subsequent interview with the petitioner, the investigating officers learned for the first time that he had not completed the escort. Although the petitioner admitted that he left the escort before reaching the Massachusetts border, he maintained that he left it in Plaistow, not far from the border.

After concluding the investigation, the Division terminated the petitioner's employment, finding that he had violated numerous administrative rules and standards of professional conduct by: (1) traveling from an extra-duty detail on scheduled regular-duty time; (2) failing to properly communicate with dispatch during his extra-duty detail; (3) absenting himself from duty without permission by recording that he was on regular duty while traveling

2

back from the extra-duty detail; (4) making a false official statement or intentional misrepresentation of fact during the investigations; (5) falsifying his time sheets; (6) obstructing an internal investigation by withholding information; and (7) endangering the life, health, or safety of another individual by leaving the escort early. The Division asserted that, under the personnel rules, some of these violations constituted terminable offenses, including "[e]ndangering the life, health or safety of another . . . individual." See N.H. Admin. R., Per 1002.08(b)(7), (9), (10), (12). The Division also noted in its termination letter that, in reaching its conclusion, it had "considered the fact that this [was] not the first time [the petitioner] [had] been disciplined for similar infractions" of the professional standards of conduct and the extra-duty detail policy.

The petitioner appealed his termination to the PAB. See RSA 21-I:46, I (2012); RSA 21-I:58, I. After a three-day evidentiary hearing, the PAB concluded that the petitioner had violated the applicable rules by traveling from extra-duty detail on scheduled regular-duty time, failing to properly communicate with dispatch during the escort, absenting himself from duty by clocking-in on regular-duty time while traveling from the extra-duty detail, and by endangering the life, health, or safety of another individual. However, the PAB also found that the petitioner had not violated the rules prohibiting false official statements or misrepresentations of fact, falsification of agency records, or obstruction of an internal investigation. The PAB noted that the petitioner, in response to the mechanical issues that delayed the escort's start time, attempted to contact a supervisor for guidance on two occasions, but no supervisor was available. It also noted that, although the petitioner contacted the detail desk requesting that he be removed from the escort detail, he was not successful. In light of these findings, the PAB concluded that the "decision to dismiss the [petitioner] was unjust in light of the facts in evidence," and it ordered that the petitioner be reinstated, subject to a sixty-day suspension without pay.

The Division filed a motion for rehearing and reconsideration, which the PAB denied. In June 2017, the petitioner was reinstated as a trooper. The Division filed this appeal the following month. See Sup. Ct. R. 10.

On appeal, the Division argues that the PAB's decision to reinstate the petitioner was unreasonable and unjust because: (1) RSA 21-I:58, I, does not authorize the PAB to "substitute its own judgment for that of the appointing authority"; and (2) the PAB failed to consider the factors provided for in the applicable personnel rule and relied upon by the Division in reaching its termination decision, including the petitioner's prior disciplinary history.

Our review of the PAB's decision is governed by RSA 541:13 (2007). Appeal of Morton, 158 N.H. 76, 78 (2008). As the appealing party, the Division

has the burden to show that the PAB's decision "is clearly unreasonable or unlawful." RSA 541:13. The PAB's findings of fact are deemed to be prima facie lawful and reasonable. Appeal of Alexander, 163 N.H. 397, 401 (2012); see also RSA 541:13. We will not vacate or set aside the PAB's decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence before us, that such order is unjust or unreasonable. Appeal of Alexander, 163 N.H. at 401. However, we review the PAB's interpretations of statutes and administrative rules de novo. Id.

Resolution of the present dispute requires us to interpret statutes and administrative rules. When interpreting both statutes and administrative rules, we ascribe the plain and ordinary meanings to the words used, looking at the rule or statutory scheme as a whole, and not piecemeal. Appeal of Morton, 158 N.H. at 78.

RSA 21-I:58, I, provides in part:

> If the [PAB] finds that the action complained of was taken by the appointing authority for any reason related to politics, religion, age, sex, race, color, ethnic background, marital status, or disabling condition, or on account of the person's sexual orientation, or was taken in violation of a statute or of rules adopted by the director, the employee shall be reinstated to the employee's former position or a position of like seniority, status, and pay. . . . In all cases, the [PAB] may reinstate an employee or otherwise change or modify any order of the appointing authority, or make such other order as it may deem just.

RSA 21-I:58, I (emphasis added). The statute establishes two categories of relief a permanent employee may receive from the PAB: one mandatory and one discretionary. See Appeal of Rowan, 142 N.H. 67, 71 (1997) (stating that the word "may" is permissive and indicates discretion, while "shall" is mandatory). First, the statute provides that, if the action complained of was taken by the appointing authority for an impermissible purpose, or violated a statute or applicable administrative rule, the PAB "shall" reinstate the employee to his or her former position, or a like position. RSA 21-I:58, I. Second, the statute provides that, in all appeals that do not warrant mandatory reinstatement under the above criteria, the PAB is vested with discretion to determine whether to grant relief and how to craft that relief. RSA 21-I:58, I; see also Duffy v. City of Dover, 149 N.H. 178, 181 (2003) ("As a general rule of statutory construction, the word 'may' is permissive and implies the use of discretion."). The parties agree that this appeal is governed by the discretionary language in the statute.

4

The legislature has delegated authority to the PAB to promulgate rules "regarding procedures for the conduct of its business." RSA 21-I:46, VII (2012); see Appeal of Mays, 161 N.H. 470, 473 (2011) (if the legislature so delegates, boards have the authority to promulgate rules "to fill in the details to effectuate the purpose of the statute," so long as those rules do not "add to, detract from, or modify the statute which they are intended to implement" (quotations omitted)). New Hampshire Administrative Rule, Per-A 207.12(b) provides:

> (b) In disciplinary appeals, including termination, disciplinary demotion, suspension without pay, withholding of an employee's annual increment or issuance of a written warning, the board shall determine if the appellant proves by a preponderance of the evidence that:
>
> (1) The disciplinary action was unlawful;
>
> (2) The appointing authority violated the rules of the division of personnel by imposing the disciplinary action under appeal;
>
> (3) The disciplinary action was unwarranted by the alleged conduct or failure to meet the work standard in light of the facts in evidence; or
>
> (4) The disciplinary action was unjust in light of the facts in evidence.

The Division argues that the PAB's reinstatement of the petitioner was unreasonable and unjust because RSA 21-I:58, I, and the applicable administrative rules do not allow the PAB to "substitute its own judgment for that of the [Division], particularly when the [Division] has properly followed the personnel rules, and the [PAB] found that the employee committed a terminable offense." Specifically, it argues that, because the PAB agreed with the Division that the petitioner committed the terminable offense of endangering the life, health, or safety of another, it was unjust and unreasonable for the PAB to reinstate the petitioner. The petitioner counters that RSA 21-I:58, I, gives the PAB the authority to reinstate an employee even if it concludes that the employee committed a terminable offense. We agree with the petitioner that the PAB acted within its authority.

The PAB held a full evidentiary hearing during which it heard live testimony from the petitioner and several of the investigating officers, and received documentary evidence. See N.H. Admin. R., Per-A 207.02(d)(1) (providing that the PAB "shall convene full evidentiary hearings" for termination appeals). Under the applicable administrative rules, the petitioner

had the burden to prove by a preponderance of the evidence that his termination was "unwarranted" or "unjust in light of the facts in evidence." N.H. Admin. R., Per-A 207.12(a), (b)(3)(4). The PAB, after considering the evidence and arguments presented, found that the petitioner had violated several rules — some of which were terminable offenses — but unanimously voted to grant the appeal and reinstate the petitioner.

Neither RSA 21-I:58, I, nor the applicable administrative rules limit the authority of the PAB to reinstate only in situations in which the employee did not commit a terminable offense. Rather, RSA 21-I:58, I, states that "[i]n all cases, the [PAB] may reinstate an employee or otherwise change or modify any order of the appointing authority, or make such other order as it may deem just." (Emphasis added.) Therefore, the PAB acted within its authority when it reinstated the petitioner after concluding that "the [Division's] decision to dismiss the [petitioner] was unjust in light of the facts in evidence." Accordingly, we conclude that the Division has not met its burden of demonstrating that the PAB's ruling was unjust or unreasonable in this respect. See RSA 541:13.

The Division next argues that RSA 21-I:58, I, and the applicable administrative rule require that, in modifying the discipline imposed by the appointing authority, the PAB consider those factors set forth in the personnel rule and relied upon by the appointing authority. See N.H. Admin. R., Per 1002.03 (listing factors an appointing authority may consider in determining appropriate discipline, including, but not limited to, the impact of the conduct on the functions of the agency, the nature and severity of the conduct in relation to the employee's position and responsibilities, and the employee's disciplinary record). Specifically, relying on New Hampshire Administrative Rule Per 1002.03, the Division argues that the decision was unjust and unreasonable because the PAB overlooked the following relevant factors: (1) the petitioner's conduct undermined public trust in the Division and left it open to civil liability; (2) the severity of the petitioner's endangerment of public safety in relation to his position as a trooper; and (3) the petitioner's disciplinary history, including prior violations of the extra-duty detail policy. The petitioner counters that Per 1002.03 applies only to the appointing authority, not to the PAB, and that its language is permissive, not mandatory. We agree with the petitioner.

Neither RSA 21-I:58, I, nor Per 1002.03 requires that the PAB consider specific evidence or factors as a precondition for modifying the order of the appointing authority. See RSA 21-I:58, I; N.H. Admin. R., Per 1002.03. Even assuming that Per 1002.03 applies to the PAB, the rule states that "an appointing authority may consider" a non-exhaustive list of factors in determining the appropriate form of discipline — thereby granting discretion over what factors to consider. N.H. Admin. R., Per 1002.03 (emphasis added).

6

Additionally, we observe that, for the most part, the PAB considered the same factors as the Division — it merely reached a different conclusion. The PAB methodically addressed each violation of the rules found by the Division: it identified the allegations against the petitioner, assessed the evidence presented before it, and reached a conclusion as to each alleged violation. In doing so, it considered and assessed the evidence regarding the petitioner's endangerment of public safety, and made extensive factual findings regarding the petitioner's disciplinary history. Accordingly, we conclude that the Division has not carried its burden of showing that the PAB's decision was unjust or unreasonable in this regard.

The Division also argues that "if the [PAB] were not required to consider the reason for the appointing authority's decision, then the appeal process would lead to an unjust and absurd result" because it "would eviscerate the discretion and authority of the appointing authority granted by the rules." It further asserts that the personnel system will be undermined if we construe the statute as not requiring the PAB to consider the factors relied upon by the appointing authority. We are not persuaded.

The purpose of the personnel rules is to implement the statutes governing the Division of Personnel and the PAB, see RSA 21-I:42-:58 (2012 & Supp. 2017), and "to establish a statewide system of personnel administration based on . . . sound management techniques." N.H. Admin. R., Per 101.01. Under the personnel rules, the appointing authority retains discretion to discipline its employees. See, e.g., N.H. Admin. R., Per 1002.03. The statutory and regulatory scheme, as described above, does not eliminate the discretion of the Division, nor undermine the uniformity or integrity of the personnel system; rather, it provides a mechanism for review of the appointing authority's exercise of discretion. See RSA 21-I:58, I.

Finally, to the extent that the Division also argues that the PAB's order was unjust and unreasonable because it did not impose any discipline for the petitioner's two violations of the extra-duty detail rules, we also disagree. The statute does not require the PAB to impose discipline for every violation of the administrative rules or standards of professional conduct. See RSA 21-I:58, I. Here, the PAB did not impose specific sanctions because of the petitioner's violations of the extra-duty detail rules. However, the record is clear that the PAB considered restricting the number of extra-duty details the petitioner could perform as discipline for those violations, but ultimately deferred to the Division, stating that the decision about sanctions "should be made by the [Division]." Therefore, we conclude that the PAB's decision was not unjust or unreasonable in this respect.

Affirmed.

LYNN, C.J., and HICKS and HANTZ MARCONI, JJ., concurred.