NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court-Franklin Family Division
Case No. 2024-0092
Citation: In re M.T., 2025 N.H. 4

IN RE M.T.

Argued: October 10, 2024
Opinion Issued: January 22, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Audriana Mekula, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, deputy chief appellate defender, of Concord, on the brief and orally, for the juvenile.

DONOVAN, J.

[¶1] The juvenile, M.T., appeals orders of the Circuit Court (Mace, J.) committing him to the Sununu Youth Services Center (SYSC) for the remainder of his minority.  He contends that the decision was erroneous because: (1) the court should not have considered the lack of available placements when it committed him to SYSC; and (2) his right to counsel was violated because he did not have counsel present for a Comprehensive Assessment for Treatment (CAT) interview.  We conclude that the trial court sustainably exercised its

discretion in placing M.T. at SYSC and that M.T. waived his argument regarding his right to counsel for a CAT interview. Accordingly, we affirm.

## I. Facts

[¶2] The following facts are taken from the trial court's orders or are otherwise supported by the record. The State filed two delinquency petitions against M.T., who was then a 16-year-old juvenile, for simple assault and willful concealment. At his arraignment, M.T.'s parents stated that they did not feel safe with M.T. in their home and requested that he be placed in residential treatment. Approximately one week later, M.T. was removed from his parents' custody and placed in shelter care. Less than two weeks later, the shelter requested that the New Hampshire Department of Health and Human Services (DHHS) remove M.T. "due to a rather significant number of critical incidents and physical restraints and very concerning, dangerous behavior." Those instances included kicking a peer in the head after threatening the same peer with a broken CD, swinging from sprinkler pipes, and stealing keys to access the roof. As a result of these incidents, the shelter exercised its right to terminate its treatment of M.T.

[¶3] At the November 29, 2023 adjudicatory hearing, M.T. pled true to both delinquency petitions, which prompted the trial court to schedule a dispositional hearing. See RSA 169-B:18 (2022). In the interim, M.T. required placement and the trial court heard arguments regarding that issue pending the dispositional hearing. M.T.'s juvenile probation and parole officer (JPPO) explained that she had "referred [M.T.] to every placement in New Hampshire and New England as a whole," but that she had not received any responses. The clinical director for the shelter testified that, when the shelter requests removal, DHHS typically identifies an alternative placement within 48 hours and returns the child to their home if no other placement is identified. She described the circumstances leading to the request for M.T. to be removed from the shelter, explaining the shelter was "unable to keep [M.T.] safe."

[¶4] Based upon a lack of "less restrictive, more appropriate" options, including the conclusion that M.T. should not return to his parents' home, the State, through the JPPO, recommended that M.T. be detained at the SYSC. The State argued that the shelter was "not fully equipped to handle" M.T., and that allowing M.T. to remain in the shelter would put M.T., the staff, and others in danger. The State also asked the trial court to authorize a placement search. M.T. requested that he remain at the shelter program pending DHHS's identification of an appropriate alternative. M.T.'s counsel also requested that the trial court require that counsel be present during any CAT.

[¶5] The trial court issued an order finding that "the State carried its burden to demonstrate probable cause to believe [M.T.] engaged in the alleged

conduct and carried its burden to prove by clear and convincing evidence [that] secured detention is necessary to ensure [M.T.'s] safety, property interests and the prospect of harm, including serious bodily harm to others." The court explained that "[g]iven [M.T.'s] parents' unwillingness to allow him back home, [the shelter's] contractual removal right – now exercised formally – and the lack of other less restrictive residential placement options, there is no other alternative to secured detention the Court can order." Accordingly, the court ordered that M.T. be detained at the SYSC but that "DHHS may place [M.T.] in a less restrictive placement as soon as one is located." In addition, the court ordered DHHS to provide M.T.'s counsel with information relating to the matter and allowed M.T.'s counsel to attend Child and Adolescent Needs and Strengths (CANS) "or similar interviews where the right to counsel attaches."[1]

[¶6] The court also required that M.T. and his mother participate in a CAT for the purpose of recommending an appropriate setting to the court. The CAT involved several components that factored into recommending the appropriate placement setting. One such component was an interview with M.T., although M.T.'s counsel was not informed of it and consequently did not attend the interview. The CAT report recommended that M.T. be placed in a Level 4 "[h]igh intensity residential treatment."

[¶7] M.T. moved for reconsideration of the trial court's order, to which the State objected. M.T. also moved to strike the CAT report, arguing that because his counsel was not present during the CAT interview, the court should not consider the report during the dispositional hearing. However, M.T. later amended his motion and requested instead that the court "accord [the CAT report] the appropriate weight it deserves in light of the fact that [M.T.] was not afforded the assistance of counsel at his CAT interview." M.T. argued that "the CAT Outcome Report may form part of the basis for the State's request as to [M.T.'s placement] and this Court's ordering of a particular disposition for [M.T.] under RSA 169-B:19, I," and therefore "it constitutes a 'critical stage' of the delinquency proceeding against him, thereby entitling [M.T.] to the assistance of counsel during the CAT interview."

[¶8] At the dispositional hearing, M.T.'s counsel requested a second CAT. The State did not object to a second CAT at which M.T.'s counsel could be present. Regarding M.T.'s placement, the State explained that it had "received 10 major incident reports [regarding M.T.] while at SYSC." The JPPO testified that "it's very apparent that [M.T.] could benefit from the supports and services that Juvenile Justice, as a whole, can provide him," which "would include . . . a rather intense level of clinical services that could be provided through an out-of-home placement, whether that be a facility setting like SYSC or a residential

---

[1] M.T. appealed the court's order following the adjudicatory hearing to this court. The State moved to dismiss or otherwise stay the appeal pending the trial court's final dispositional order. We dismissed that appeal as moot following the trial court's issuance of dispositional orders.

placement setting." As a result, the State requested that M.T. be committed to SYSC pending the identification of an alternative placement. M.T. requested that he be returned to the care of his parents, arguing that "it is an unusual punishment to place" him until his eighteenth birthday at SYSC.

[¶9] Following that hearing and a detention review hearing, the trial court ordered that M.T. be committed to SYSC for the remainder of his minority, reasoning that SYSC was the only available option that "balances the public's right to safety with [M.T.]'s need for intensive care and supervision." The court elaborated that "[p]ut bluntly, continuing detention for [M.T.] is the only option available to the Court in this case," and "it remains the case [that] New Hampshire lacks alternative residential options for juveniles like [M.T.] who struggle with obvious mental illness and lack the capacity without intensive treatment to avoid the maladaptive behaviors that routinely and regularly flow." It further ordered DHHS "to expand its search for less restrictive options to providers offering services in other states."

[¶10] When the second CAT occurred, M.T.'s attorney was contacted multiple times to schedule an interview with M.T. The attorney did not respond and M.T. was not re-interviewed. The second CAT report also recommended that a high intensity setting would be appropriate. M.T.'s counsel filed a motion to reconsider the dispositional orders, which was denied. This appeal followed. M.T. has since been placed in an out-of-state residential treatment facility.

## II. Analysis

[¶11] We review placement decisions under our unsustainable exercise of discretion standard. See RSA 169-B:19, I (Supp. 2023). This standard requires that we review whether the record establishes an objective basis for the trial court's discretionary judgments. See L.C. v. W.C., 174 N.H. 355, 361 (2021). "[O]ur task is not to determine whether we would have found differently, but only to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it." Id. (quotation and brackets omitted).

[¶12] We first address M.T.'s contention that the trial court erred by considering the unavailability of non-secure placement facilities when it committed M.T. to SYSC. In its order, the trial court stated that detention at SYSC is "the only option available to the Court" because New Hampshire "lacks alternative residential options for juveniles." M.T. argues that the trial court cannot consider unavailability in its placement decision because RSA 169-B:19 is silent as to whether availability may be considered. Pursuant to RSA 169-B:19, I, "[i]f the court finds that a minor is delinquent, the court shall order the least restrictive of the following dispositions, which the court finds is the most

4

appropriate." Subsection (j) authorizes the court to "[c]ommit the minor to the custody of the department of health and human services for the remainder of minority." RSA 169-B:19, I(j).

[¶13] M.T. contrasts that statute with RSA 169-B:14, I (2022), which allows the court, following arraignment of a minor but pending the adjudicatory hearing, to order the minor "[d]etained at a facility . . . for detention of minors pursuant to" certain enumerated restrictions. RSA 169-B:14, I(e). One restriction is that "[a] minor shall not be securely detained unless secure detention is necessary . . . [t]o provide care and supervision for a minor who is in danger of self-inflicted harm when no parent, guardian, custodian, or other suitable person or program is available to supervise and provide such care." RSA 169-B:14, I(e)(2)(B).

[¶14] M.T. asserts that "[t]he absence of this language from RSA 169-B:19 demonstrates that the legislature did not intend for courts to entertain the purported unavailability of placement options when fashioning a child's disposition." We disagree.

[¶15] When interpreting statutes, we "will not consider what the legislature might have said or add language that the legislature did not see fit to include." In re Alex C., 161 N.H. 231, 235 (2010) (quotation omitted). We review issues of statutory interpretation de novo. Id. Although RSA 169-B:19, I(j) does not specify availability as a consideration, it mandates that the trial court determine the "least restrictive" and "most appropriate" placement. RSA 169-B:19, I. That mandate vests the trial court with discretion to determine the "least restrictive" and "most appropriate" placement. See id. In exercising that discretion, the court could sustainably determine that the "most appropriate" placement for a minor is one that is available. See id. In this particular statutory setting, whether a placement is appropriate presents a fact-specific inquiry — what is appropriate in one situation may be inappropriate in another. Here, no other option was available to provide for M.T.'s needs, despite DHHS's efforts. In fact, M.T.'s JPPO testified that she unsuccessfully attempted to place M.T. in every suitable facility in New England. Therefore, the court sustainably exercised its discretion when it considered the lack of available placements.

[¶16] Accordingly, we also conclude that the trial court sustainably exercised its discretion by committing M.T. to SYSC for the remainder of his minority because it was the least restrictive and most appropriate placement. Although other less restrictive options may have existed, these options were not available to M.T. RSA 169-B:19, I, provides a variety of dispositional options to the court. See id. M.T. requested that he return to the care of his parents. The court could not place M.T. with his parents because they were unwilling and unable to provide for his needs at their home. See RSA 169-B:19, I(a). Nor

could the court release M.T. to DHHS for placement in a non-secure facility because M.T. was not accepted into any such facility in New England.[2]  See RSA 169-B:19, I(f).  In addition, in light of M.T.'s unabated behavior and prior dangerous conduct, SYSC was well-equipped to provide M.T. with the intensive treatment and supervision he required.  See Appeal of Alexander, 163 N.H. 397, 399 (2012) ("SYSC is a secure facility that provides detention, treatment and rehabilitation services for serious, chronic and/or violent juvenile offenders." (parentheses omitted)).  With no other option available and M.T. requiring "intensive care and supervision," the court reasonably determined that it was necessary to commit M.T. to SYSC for the remainder of his minority.  Based upon the record before us, we conclude that the trial court sustainably exercised its discretion in ruling that SYSC was the least restrictive and most appropriate placement.

[¶17] M.T. next requests that his disposition "be vacated, and a new CAT be completed — with his lawyer present for the interview — in advance of any future dispositional hearing" because his lawyer was not present for the initial CAT interview.  We decline to address this issue because the minor waived it before the trial court.  In the trial court, M.T.'s counsel stated that he did not want a repeat CAT because the delay associated with conducting another interview and assessment would prejudice M.T.  Instead, he asked that the court accord the CAT report its appropriate weight given that the interview was conducted without counsel, and the court agreed to do so.  Under these circumstances, we conclude that the minor waived this issue, and we decline to address it.

### III.   Conclusion

[¶18] For the foregoing reasons, we conclude that: (1) the court did not err when it considered availability when deciding to place M.T. in SYSC for his minority; and (2) M.T. waived his argument regarding his right to counsel for a CAT interview.  Accordingly, we affirm.

Affirmed.

MACDONALD, C.J., and BASSETT and COUNTWAY, JJ., concurred.

---

[2] M.T. also argues that "the State expressly disavowed its responsibility to maintain non-secure placements" because it must fund placements other than SYSC for minors such as M.T.  We disagree.  The State referred M.T. to every placement in New England, and he had not been accepted into any.  In addition, M.T.'s behavior eliminated any potentially available alternatives.  In light of those considerable efforts, and the limitations posed by M.T.'s behavior, we cannot conclude that the State shirked its responsibilities.