Board of Mental Health Practice
No. 2008-382

APPEAL OF LAURENCE M. KELLY, ED.D
(New Hampshire Board of Mental Health Practice)

Argued: January 15, 2009
Opinion Issued: April 3, 2009

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Robert E. Murphy, Jr.* and *Gregory M. Sargent* on the brief, and *Mr. Murphy* orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Anthony I. Blenkinsop*, senior assistant attorney general, on the brief and orally), for the New Hampshire Board of Mental Health Practice.

BRODERICK, C.J. The petitioner, Laurence M. Kelly, Ed.D., appeals an order of the New Hampshire Board of Mental Health Practice (Board) finding that he engaged in professional misconduct and imposing discipline. We reverse.

The Board found or the record supports the following facts. Dr. Kelly has been a licensed psychologist since 1985. He has a private practice in Manchester, where he provides consultation, evaluation and treatment services for children, adolescents and families. He also provides similar services for individuals suffering from substance abuse and he is employed as a school psychologist by the Manchester School District.

This appeal arises out of a consultation by Dr. Kelly with Patient A, a divorced father seeking overnight visitation with his minor daughter. In 2003, Patient A received a court order requiring him to satisfy certain conditions "in order . . . to be in a position to request the reinstatement of overnight visitation [with his daughter]." The order provided that:

> [T]he Court will not entertain a request by [Patient A] for the resumption of overnight visitation with [his daughter] until he does the following:
>
> 1. Complete a new psychological evaluation.
> 2. Present supporting expert testimony at a hearing respecting overnight visitation and establish that [he] has successfully dealt with anger and control issues and parenting issues as they relate to [his daughter].
> 3. Document the successful completion of an individual parenting program focusing on age and gender appropriate expectations and related parenting behavior.

Patient A retained Dr. Kelly to help him satisfy the conditions set forth in the order.

Dr. Kelly performed a full psychological evaluation of Patient A in November 2003 and completed a written report. He also had several one-hour therapy sessions with Patient A. Before the sessions, Dr. Kelly sometimes saw Patient A and his daughter interacting in his waiting room, and he testified that he observed their relationship to be a warm and loving one.

Dr. Kelly was subpoenaed by Patient A to testify at the subsequent court hearing on visitation. He testified to the substance of his evaluation report, in which he recommended to the trial court that Patient A be permitted overnight visitation with his daughter. Among other things, his report made the following recommendations:

1. Increase visitation with daughter, both [father and daughter] would grow from the interaction.

2. [The father] could pick his daughter up at school on Friday and return her home between 6 or 7 on Sunday every other weekend.

3. Every other holiday could be worked out between mother and father.

4. [The father] should be allowed to spend two-weeks vacation with his daughter every year.

5. Individual counseling [for the father] to deal with anxiety, career counseling, and parenting issues.

Prior to the visitation hearing, Dr. Kelly submitted a letter to the trial judge "to outline [his] testimony revolving around [Patient A]," elaborating upon and explaining, in part, the basis for the recommendations. The letter included the following observations and recommendations with respect to visitation:

5. *Parenting and custody issues*: all of the research supports that the mental health of the child is impacted adversely by strife between parents. Both parents need to work together for the good of the child with [Patient A] playing an increasing role. The roles of mother and father are equally important and essential for the parenting of a healthy child.

6. *Increase visitation with daughter*: Both would grow from the interaction. The research states that parenting changes people for the better on both ends. A father can learn patience, love, compassion and empathy through effective parenting. It is a profound life experience that can change both father and daughter forever. [Patient A] is committed to being a better father with each passing day. He completed a parenting course last year and lives the things he learned.

7. [Patient A] would pickup [*sic*] his daughter at school on Friday and return[] her [to] her mother's house between 6:00 or 7:00 p.m. every other weekend. School is often

the best place to pick up a child due to . . . feelings of safety and security. Schools are well supervised and comfortable for the child.

8.  Every other holiday could be worked out between mother and father. The best parenting decisions are made by honest and open communication between mother and father. Each parent should support the decisions made by the other. Each side should make compromises.

9.  [Patient A] should be allowed two weeks vacation with his daughter every year. The more normal the visitation schedule the deeper the relationship between parent and child. Most families take vacations that last two weeks long and entail special times and experiences. [Patient A] would like to give his daughter quality times and experience each summer.

Prior to the court hearing, Patient A's ex-wife filed a complaint against Dr. Kelly with the Board, alleging that he was "out of line" and "unethical." Specifically, she complained that his opinion that "both [father and daughter] would grow from the interaction" was a statement "regarding [the minor daughter with whom] he has . . . had [no] contact" and that it was made without knowledge of the issues involved in the family's visitation dispute.

Dr. Kelly responded to the complaint, denying any wrongdoing. In his letter to the Board, he wrote: "I was requested to evaluate [Patient A] . . . as part of a Court Order. I submitted a psychological report in compliance with a Court Order with the understanding that I would . . . be open to cross examination . . . as deemed appropriate." He further asserted that his "piece was to evaluate[] [Patient A] with respect to his mental health issues and capability of caring for a minor child" and that his evaluation was "only one component considered by the Courts." Dr. Kelly explained that he had not made any custody recommendations, only recommendations regarding visitation that were based upon empirical test data, years of clinical experience and knowledge of Patient A. He did not claim that he evaluated the daughter; nor did he claim to have provided an opinion of the psychological characteristics of anyone other than Patient A.

The Board conducted an investigation of the complaint and issued a report, noting that Dr. Kelly's statement was all-inclusive in its scope referring to all children. The report noted that "[h]e did not speak to the child . . . or to her therapist or any of her care givers to obtain further information regarding any specific benefit or harm such visits would have

on her." The Board's report concluded that "[i]n order to have acted as the expert witness regarding the visitation and parenting issues, Dr. Kelly should have conducted interviews with the child, her caregivers and therapist," and that "[his] opinion that the child would benefit from increased visitation with her father without further investigation of the child was not the action recommended by [AMERICAN PSYCHOLOGICAL ASSOCIATION, ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT, Standard] 9.01(b)."

In its Notice of Hearing issued after the investigation, the Board identified the issues to be determined:

A.   Whether, by making a recommendation in writing regarding visitation between Patient A and the minor child, [Dr. Kelly] engaged in professional misconduct in violation of RSA 330-A:27, II(c) and/or (d); [NEW HAMPSHIRE ADMINISTRATIVE RULES, Mhp] 501.02(a)(1); and [AMERICAN PSYCHOLOGICAL ASSOCIATION, ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT, Standard] 9.01(a) and/or (b); and/or

B.   Whether, by reporting recommendations regarding visitation between Patient A and the minor child by offering testimony in court, [Dr. Kelly] engaged in professional misconduct in violation of [the same statute and/or rules].

C.   If any of the above allegations are proven, whether and to what extent [Dr. Kelly] should be subjected to one or more of the disciplinary sanctions authorized by RSA 330-A:27, III.

At his hearing before the Board, Dr. Kelly was the only witness, and the parties stipulated to all exhibits. The Board was comprised of public members and mental health professionals, although no member was a psychologist. As a preliminary matter, the Board heard and denied a motion to dismiss presented orally by counsel for Dr. Kelly.

During his direct and cross-examination, Dr. Kelly explained how he conducted his evaluation of Patient A, and how he presented the results in his report, the letter to the trial judge and his testimony at the visitation hearing. He identified for the Board the current research in his field and discussed his thirty years of clinical experience as a psychologist. He also testified that the testing he performed on Patient A, the research in his field and his own clinical work provided a sufficient basis for his recommendations with respect to Patient A's visitation with his daughter. Dr. Kelly made clear that his recommendations were not professional opinions of the

daughter's psychological characteristics. Rather, they were intended to be understood in the global sense that "[o]n sound psychological princip[le]" he "ha[d] not met a child yet that wouldn't benefit from a father being more involved." Hearing counsel for the Board presented no witnesses and no evidence as to the appropriate standard of care for a psychologist under ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT, Standards 9.01(a) or (b). *See* AMERICAN PSYCHOLOGICAL ASSOCIATION, ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT (APA CODE OF CONDUCT), Standard 9.01(a)-(b) (2002), at http://www.apa.org/ethics/code2002.pdf.

In its order, the Board found:

> Dr. Kelly never represented . . . that his evaluations or opinions were based upon examinations conducted of [the daughter or her mother]. He accurately portrayed in the [report and letter] and in his testimony . . . that his evaluative comments were based exclusively on examination of Patient A. In his court testimony, Dr. Kelly further submitted that his many years [of] experience as a psychologist further substantiate his opinions. Asked in Board testimony whether he had an opinion to a reasonable degree of certainty within his science of psychology as to whether the evaluation that he performed had an appropriate basis, Dr. Kelly answered that he did.

The Board also granted Dr. Kelly's request for findings that he "expressed the limitation of the basis of his psychological report and recommendation repeatedly throughout his testimony" and that

> [i]n a colloquy between [Patient A] representing himself [at the visitation hearing] and [the trial judge], the judge made clear that the judge and the parties were aware of the limited basis of the evaluation. [The trial judge said to Patient A that] "[Dr. Kelly] wasn't given a task that in terms of his presenting testimony for you sir that he had to speak to the mother or the Guardian Ad Litem as a condition to do so. I'm aware of that and so is [the mother's attorney]."

(Citations and brackets omitted.)

Nonetheless, the Board concluded that Dr. Kelly engaged in misconduct because his letter to the trial judge and his evaluation report violated APA CODE OF CONDUCT, Standards 9.01(a) and (b). The Board found, in relevant part that:

> Dr. Kelly's five enumerated recommendations as reflected in his Psychological Report [were] insufficiently substantiated on infor-

mation and techniques for such opinions for a psychologist. Dr. Kelly's opinions go beyond commenting upon and directing actions that would be strictly those of Patient A. Dr. Kelly recommends increased visitation with the daughter, opining that, "both would grow from the interaction" and then asserts that "every other holiday could be worked out between mother and father." Such a recommendation would require evaluation of and direction to persons Dr. Kelly did not examine and concerning whom he had insufficient information.

With respect to his letter to the trial judge outlining his anticipated testimony at the court hearing on visitation, the Board found: "[T]hese comments lack adequate basis for assessment in violation of [APA CODE OF CONDUCT, Standards] 9.01(a) and (b)."

The Board imposed discipline upon Dr. Kelly, including, among other things, restricting his professional license, requiring that he engage in a period of supervision for twelve months, requiring that he provide a copy of the Board's order to his current employers and affiliates and mandating that the Board's order become a permanent part of his public file. Dr. Kelly's motion for reconsideration was denied. This appeal followed.

On appeal, Dr. Kelly argues that: (1) the Board erred in denying his motion to dismiss because hearing counsel presented no evidence that he did not have an adequate basis for his opinions and testimony; (2) the Board violated his right to be notified of the charges against him at the commencement of the proceeding; (3) the Board failed to consider several mitigating factors in its imposition of discipline; and (4) the Board's imposition of discipline was grossly disproportionate to the alleged misconduct and in excess of its authority.

Our standard of review for the Board's decisions is governed by RSA 541:13 (2007). *See* RSA 330-A:29, VII (2004). We defer to the Board's findings of fact, *see Appeal of City of Manchester*, 153 N.H. 289, 292 (2006), and we will reverse its decision only if it is erroneous as a matter of law, or if we are satisfied by a clear preponderance of the evidence that its order was unjust or unreasonable. *Appeal of Lowy*, 156 N.H. 57, 60 (2007).

The Board has the authority to conduct disciplinary hearings for any alleged unprofessional or dishonorable conduct by a mental health practitioner. *See* RSA 330-A:27, II(c) (2004). The Board's definition of what constitutes professional or dishonorable conduct for a psychologist includes failure to adhere to the APA CODE OF CONDUCT. *See* N.H. ADMIN. RULES, Mhp 501.02(a)(1) ("A [psychologist] shall adhere to the ethical principles of the profession . . . as adopted by . . . the American Psychological Association."). We review the Board's interpretation of its administrative

rules *de novo*, ascribing the plain and ordinary meanings to the words used and looking at the regulatory scheme as a whole and not piecemeal. *See Appeal of Morton*, 158 N.H. 76, 78 (2008). Although we accord deference to the Board's interpretation of the rule, that deference is not absolute. *See id.* at 78-79. We still examine its interpretation to determine if it is consistent with the language of the regulation and with the purpose the regulation is intended to serve. *See id.* at 79.

We first examine APA CODE OF CONDUCT, Standard 9.01, which constitutes the basis for the alleged misconduct. Standard 9.01 provides:

> Bases for [Psychological] Assessments
>
> (a) Psychologists base the opinions contained in their recommendations, reports, and diagnostic or evaluative statements, including forensic testimony, on information and techniques sufficient to substantiate their findings. . . .
>
> (b) Except as noted in 9.01(c), psychologists provide opinions of the psychological characteristics of individuals only after they have conducted an examination of the individuals adequate to support their statements or conclusions. When, despite reasonable efforts, such an examination is not practical, psychologists document the efforts they made and the result of those efforts, clarify the probable impact of their limited information on the reliability and validity of their opinions, and appropriately limit the nature and extent of their conclusions or recommendations. . . .
>
> (c) When psychologists conduct a record review or provide consultation or supervision and an individual examination is not warranted or necessary for the opinion, psychologists explain this and the sources of information on which they based their conclusions and recommendations.

On the record before us, we hold that the Board erred in its interpretation and application of the APA CODE OF CONDUCT to the circumstances of this case. One goal of the APA CODE OF CONDUCT is to promote "the welfare and protection of the individuals and groups with whom psychologists work." APA CODE OF CONDUCT, Preamble at 3. The APA CODE OF CONDUCT further provides that "the application of an [APA CODE OF CONDUCT] Standard may vary depending on the context" and that "[w]hether a psychologist has violated the [APA CODE OF CONDUCT] standards does not by itself determine whether . . . legal consequences occur." APA CODE OF CONDUCT, Introduction and Applicability at 2.

In its rulings with regard to APA CODE OF CONDUCT, Standard 9.01(a), the Board appears to have concluded that Dr. Kelly expressed opinions

about the daughter that were not based upon information and techniques sufficient to substantiate his findings. However, the Board's findings of fact do not support the conclusion that Dr. Kelly expressed opinions about the daughter, and the trial court's order did not request or require such opinions.

The Board's own report of its investigation of the complaint noted that Dr. Kelly's statement was all-inclusive in its scope referring to all children. A review of the record reveals that Dr. Kelly consistently and repeatedly expressed that none of the opinions or recommendations he provided were made with respect to the daughter in particular, but were offered only with respect to Patient A and parent-child relationships generally, based upon his years of clinical experience. Dr. Kelly's entire psychologist-patient relationship with Patient A was circumscribed by court order. He was retained solely to comply with a court order requiring Patient A to undergo a psychological evaluation. He was subpoenaed to testify about his opinions concerning Patient A as they related to his capacity to have visitation with his daughter. He was not ordered to evaluate the daughter, and at all times the parties involved and the trial judge were fully aware of the limitations of his recommendations, whether they were presented in court or in writing. No one could reasonably have been misled about the scope or bases of his opinions. Hearing counsel presented no evidence to show that Dr. Kelly provided an opinion concerning any individual other than Patient A or that his conduct undermined the welfare and protection of those with whom he worked.

We observe that the Board's ruling on the alleged violation of APA CODE OF CONDUCT, Standard 9.01(a) was non-specific, stating that Dr. Kelly's recommendations "would require evaluation of and direction to persons Dr. Kelly did not examine and concerning whom he had insufficient information." With regard to Dr. Kelly's observations of the father and daughter in his waiting room, the Board stated: "[S]uch contacts fall short of a professionally adequate basis for the assessments embodied in Dr. Kelly's court testimony, in violation of [APA CODE OF CONDUCT, Standards] 9.01(a) and (b)." The language of the order suggests that the Board interpreted APA CODE OF CONDUCT, STANDARD 9.01(a) to mean that Dr. Kelly should have examined or otherwise gathered information from additional, unnamed individuals or sources to comply with the Standard. It is possible that the Board intended these statements to mean that, in addition, it found that Dr. Kelly's opinions *as they pertained to Patient A* were not based upon information and techniques sufficient to substantiate his findings as required by the APA CODE OF CONDUCT. If this is the case, then we disagree.

The record provides thorough explanations of the evaluation procedures Dr. Kelly used on Patient A and the significance of the results they yielded. In his testimony before the Board, Dr. Kelly explained how the results were represented in his report, his letter to the trial judge and his testimony at the visitation hearing. The record contains evidence about current research in the field of psychology, which Dr. Kelly said supports his recommendations. In sum, Dr. Kelly testified that the evaluation, research and his own clinical experience formed a sufficient basis for his recommendations with respect to Patient A's requested reinstatement of overnight visitation. Hearing counsel presented no evidence to show that the information and techniques relied upon by Dr. Kelly were insufficient to substantiate his recommendations.

We now turn to the Board's application of APA CODE OF CONDUCT, Standard 9.01(b). This Standard applies only if Dr. Kelly provided an opinion of a psychological characteristic of an individual other than Patient A. *See* APA CODE OF CONDUCT, Standard 9.01(b). The Board's own report of its initial investigation of the complaint as well as several of the Board's findings stated that his opinions were limited to Patient A, and that references to the child were intended in the global sense that children benefit from having an involved father. Assuming, without deciding, that the Board could reasonably have found that the recommendation to "[i]ncrease visitation with daughter," and the statement that "both would grow from the interaction," did in fact provide an opinion as to the daughter, the Board's ruling failed to address how this recommendation constituted an opinion of a psychological characteristic of the daughter such that an examination of the daughter would be required pursuant to the APA CODE OF CONDUCT. *See id.*

■ We agree with the State that *Petition of Grimm*, 138 N.H. 42, 55 (1993), and *Appeal of Beyer*, 122 N.H. 934, 939-40 (1982), provide that expert testimony is not necessary in all cases to establish a violation of the applicable standard of care. However, NEW HAMPSHIRE ADMINISTRATIVE RULES, Mhp 206.10(a) still mandates that the burden of proof for establishing Dr. Kelly's alleged misconduct rests with hearing counsel: "The party asserting the affirmative of a proposition shall have the burden of proving the truth of that proposition by a preponderance of the evidence." We conclude that hearing counsel failed to carry that burden.

Having determined that the Board erroneously found Dr. Kelly engaged in professional misconduct, we need not address the parties' remaining arguments.

*Reversed.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.