Filed 5/13/15  Spring v. Board. of Psychology CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHAEL SPRING,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BOARD OF PSYCHOLOGY,<br><br>        Defendant and Appellant. | A140897<br><br>(Marin County<br>Super. Ct. No. CIV 1304070) |

Dr. Michael Spring (petitioner) brought this petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) to appeal a decision by the Board of Psychology (Board) disciplining him for gross negligence and functioning outside his field of competence (Bus. & Prof. Code, § 2960, subds. (j), (p)) based on two declarations he submitted in a family court action.  The Board appeals the trial court's order granting the writ and directing the Board to set aside its decision.  We affirm.

BACKGROUND

*Administrative Hearing*

The evidence at the administrative hearing was as follows.  Petitioner had provided marriage counseling to the family court parties (referred to herein as Mother and Father) for several years, for a total of 50 sessions.[1]  Mother and Father ultimately

---

[1] Petitioner's case notes from his sessions with Mother and Father were introduced as an exhibit at the administrative hearing.  The parties dispute the admissibility of a transcribed version of these notes.  We do not rely on this transcription and therefore need not decide its admissibility.

decided to divorce. After a mediator recommended that Father have 35 percent custody of the couple's only child (Child), Father contacted petitioner. Petitioner wrote two declarations that Father's counsel filed in the family court proceeding.

The first declaration was filed June 3, 2011. It stated, in its entirety: "[Mother] and [Father] have been in couple's therapy for a few years, and I have observed each of them many times as they interacted with their son [Child] in the waiting area of my office. [¶] Each of them has demonstrated great love and caring for [Child] and each of them has been very involved in his life and growth and development. I consider them to be excellent and involved parents. [¶] [Child], for his part, needs both of them to continue to be involved in his life, especially as he moves deeper into adolescence. This is especially important for him as a special needs child. Any attempt to block one parent or the other from frequent contact with [Child] would, in my opinion, be destructive to all parties. [¶] My recommendation is that [Child's] parents be given 50-50 custody in which they can work out their arrangements together."

The second declaration was filed June 16, 2011. It stated, "I, MICHAEL SPRING, am a licensed clinical psychologist practicing in San Rafael, CA. My license # is: PSY3498. I have been practicing psychotherapy and marriage counseling for over fifty years, and have been seeing [Mother and Father] on and off since January, 2006. Over the past five years, I have had extensive opportunity to evaluate [their] relationship with each other, as well as with their son, [Child]. [¶] I have learned that the mediator who evaluated [Mother and Father's] custody has recommended that [Mother] be designated as the primary caretaker, with a custody timeshare of 36% to [Father], amounting to 2 or 3 days per week. I have also learned that the mediation lasted approximately 90 minutes and, based on a discussion with [Father] as well as a review of the report, that much of the focus of the mediation session was on the parties' relationship with each other (and prior incidents of discord between them), rather than on their relationship with their son. I believe that the breakdown of [Mother and Father's] marriage created a high degree of accusations and defensiveness between them, and that as a result, the mediation may not have focused as much on the parties' relationship with

2

their son as it should have. I am therefore submitting this declaration to express my professional disagreement with the mediator's recommendation that [Child] not be granted equal time with his father. [¶] Throughout his life, [Child] has spent significant time with his father everyday. The mediator's recommended schedule would result in [Child] missing out on much of the activities and time spent with his father that he has become accustomed to over many years. [Father] has been involved in hands-on activities with [Child] in an ongoing and consistent basis. While it is true that [Mother] has also been very involved in [Child's] life and has advocated for him fervently, I believe that [Child] needs the close relationship with his father to continue as he moves deeper into adolescence if he is to mature properly. Therefore, I urge the court to grant [Child] equal time with his father."

Mother filed a complaint with the Board stating petitioner acted "as a witness" in the family court proceedings even though he had not seen Child professionally.

Petitioner submitted to the Board a written response to Mother's complaint, stating, "[a]s is the case with marriage counseling, [Mother and Father's] son was often brought up. Parenting was discussed and I advised. . . . The son, an only child, is a special needs child. Both parents were very involved in his day to day care, his needs, and his learning. . . . They both cared about their son deeply. As divorce became the couple's decision, I worked with them towards setting up a healthy situation for each of them and for their son. Children of divorce suffer great losses, and it was a focus of our work around the divorce." Petitioner further wrote that he observed Child in the waiting room and witnessed his interactions with Father. "My recommendation of 50/50 custody was based on these experiences, as well as the data which came up in my office indicating caring, love, concern, and involvement from both parents for their son. Additionally, was my knowledge that an adolescent needs both parents to interact with in the course of his individuating, and developing."

In an interview by Board investigators, petitioner stated he worked as a school psychologist early in his career and had specialized in marriage counseling since 1978.[2] He explained the basis for his custody recommendation in the family court proceedings was his "clinical . . . knowledge of [Mother and Father] as a couple." He knew from his sessions with Mother and Father that Father ran, played music, and "horsed around" with Child, and was involved with him "on a pretty steady basis." Mother and Father continued to see petitioner after they decided to divorce and discussed their desires regarding Child and the divorce. Petitioner had never conducted a session with Child, but only had observed Child in the waiting room where he witnessed Child's interactions, primarily with Father.

In the Board interview, petitioner stated he would "[a]bsolutely not" feel comfortable making a declaration regarding Child's "mental status." He stated his declaration was submitted "with the idea that if they could have 50/50 custody and eventually not live together and perhaps they could work together and have an amicable . . . negotiation to work with their son. . . . [Y]ou're probably familiar with Judy Wallenstein's longitudinal studies that show that parents that can . . . work together make all the difference in the world to the outcome of their child."[3]

Dr. John Shields, a psychologist specializing in forensic psychology, testified as an expert for the Board. He described his training and experience in child custody evaluations, including his appointment as a family court child custody evaluator in about five or six cases, and his current practice as a forensic evaluator "conducting evaluations or offering consultation to courts and attorneys." He testified to his familiarity "with standards of care that apply not only to psychologists but also with guidelines that are related to forensic practices, such as a child custody evaluation, which was the issue in this case."

---

[2] A transcript of the videotaped interview was submitted as an exhibit in the administrative hearing.

[3] Petitioner was apparently referring to Wallerstein, et al., The Unexpected Legacy of Divorce: A 25 Year Landmark Study (2000).

4

Shields described the training and experience required to serve as a court-appointed custody evaluator as set forth in California Rules of Court, rule 5.225.[4] He testified that a formal custody evaluation pursuant to rule 5.220 would include interviews with and observations of the child or children at issue. When asked whether anyone other than a child custody evaluator would make custody recommendations to the courts, Shields replied that a psychologist appointed by the court or a mediator might make custody recommendations, "[b]ut a practicing psychologist who's maybe seeing one or both of the parents doesn't -- it would not be expected they would make a custody recommendation to a court." Shields later elaborated that a "psychologist might be seeing one of the parents or the child. They might come in to the court and offer information to the court about the current status and progress of that individual as they have come to know it in their professional capacity. What they wouldn't typically do is make a recommendation, to the court on custody."

Shields identified the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct (APA Code of Conduct) as the standard of care for psychologists. He testified that section 9.01(b) of this code (hereafter, section 9.01(b)) states, "Psychologists provide opinions of psychological characteristics of individuals only after they have conducted an examination of the individuals adequate to support their statements or conclusions."[5] Shields testified petitioner's declarations gave "an opinion about the psychological characteristics of an individual. . . . [H]e addresses some of the psychological characteristics of [Child]." Shields later elaborated that petitioner's

---

[4] All undesignated rule citations are to the California Rules of Court.

[5] Shields also referred to APA guidelines for child custody evaluations in family law proceedings and for the practice of forensic psychology. In a letter to the Board written during its investigation, Shields quoted passages from these guidelines. The custody evaluation guidelines provide that a custody evaluation requires "an assessment of the psychological functioning and developmental needs of each child" and "an evaluation of the interaction between each adult and child." The forensic guidelines echo section 9.01(b) in stating no evidence of "psychological characteristics" should be provided absent an opportunity to examine the individual in question.

declarations opined that Child "has psychological characteristics such that he needs more time with his father or needs a close relationship with his father." Shields testified, "the important issue here is that recommendations to a court related to child custody, the methodology by which one does that is spelled out in great detail. And we heard about that earlier. And it's spelled out in the Rules of Court. [¶] So simply to . . . base a recommendation regarding custody on only the mediation report without ever interviewing in this case, the child or the adolescent, is inappropriate."

Shields opined that petitioner's declarations constituted an extreme departure from the standard of care because "a reasonable psychologist would not make a custody recommendation to a court without conducting the proper evaluation. And certainly would not be giving opinions about the psychological characteristics of individuals, some of whom they have never interviewed or evaluated." Shields further opined that petitioner practiced outside his particular field of competence because "child custody evaluation and recommendation to the court related to custody evaluation is within the province of forensic psychology," which petitioner had no experience in.

*Board Decision*

The Board set forth the evidence elicited at the administrative hearing and quoted from section 9.01(b), as well as the APA custody evaluation and forensic guidelines identified by Shields. The Board found "[i]t was established by clear and convincing evidence that [petitioner] was grossly negligent in providing an opinion to the family court concerning the custody of Child, in that it was an extreme departure from the standard of care of licensed psychologists. [Petitioner's] actions were outside his area of competence, in that he is not a forensic psychologist and has had no special training in forensic psychology or in conducting child custody evaluations." The Board revoked petitioner's psychologist's license, stayed the revocation, and placed the license on probation for five years with a number of conditions.

*Superior Court Proceedings*

Petitioner sought a writ of administrative mandamus. The trial court granted the writ.

6

The trial court concluded certain findings were not supported by the evidence, specifically, that "Petitioner's custody recommendations were in effect 'child custody evaluations'; these recommendations constituted 'an extreme departure from the standard of care of licensed psychologists'; and Petitioner's 'actions were outside his area of competence.' " The trial court found, "Petitioner's custody recommendations were not intended to be, nor would any Family Law judge in this court mistake them for, the extensive and detailed 'custody evaluations' of the psychological characteristics of the child, pursuant to [rule 5.220 et seq]. [¶] A full 'child custody evaluation' is a 'comprehensive examination of the health, safety, welfare, and best interest of the child.' ([Rule 5.220(c)(3), (4)].) [¶] Based on the evidence in the administrative record, the court finds that Petitioner's recommendations were not the equivalent of a 'child custody evaluation', but were brief letters to Father's attorney for submission to the Family Law Judge which described the therapeutic context in which Petitioner counseled the couple for many years, and the limited observation of the couple's interaction with their son. [¶] The court also finds these letters were meant to provide a supplement to the actual 'child custody evaluation' submitted by the mediator. [¶] The court also finds that Petitioner's views were intended to provide additional insight about the couple's family dynamic, which information was unavailable from any other source. [¶] The touchstone of a child custody order is to make a ruling that is in the 'best interest of the child.' (Fam. Code § 3011; rule 5.220(b).) To do that effectively, courts often receive these sorts of comments and input from treating professionals. [¶] The court finds that the evidence establishes that Petitioner did not make a 'child custody evaluation', and his conduct should not have been judged against the standard of care applicable to Forensic Psychologists who prepare and submit child custody evaluations. [¶] The [Board's] findings relied heavily on the Board's expert Dr. Shield's opinion that Petitioner's recommendations were in effect, child custody evaluations, and that he did so outside of his area of competence. As discussed above, the weight of the evidence does not support these findings."

The trial court additionally found the Board's decision "does not contain any Findings Of Fact indicating that Petitioner's custody recommendations also provided an opinion on the 'psychological characteristics' of the child. Nowhere in the Decision does the [Board] identify the portion(s) of the recommendations that seek to describe the child's 'psychological condition.' " The court noted that, while such a conclusion generally requires remand to the agency to make adequate findings, remand was not required here because the writ was granted on the independent basis described above.

DISCUSSION

"When an administrative decision substantially affects a fundamental vested right, such as the revocation of a professional license or the right to practice one's profession, the independent judgment standard of review applies. [Citations.] The superior court examines the administrative record for errors of law and exercises its independent judgment upon the evidence 'in a limited trial de novo.' [Citations.] The superior court resolves evidentiary conflicts, assesses the witnesses' credibility, and arrives at its own independent findings of fact." (*Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 574 (*Rand*).)

"On appeal, we do not exercise our independent judgment. We review the trial court's findings under the substantial evidence test and determine whether substantial evidence supports the trial court's conclusions. [Citations.] We must resolve all conflicts in the evidence, and indulge all reasonable inferences, in favor of the superior court's judgment. [Citations.] However, we are not bound by any legal interpretations made by the administrative agency or the trial court; rather, we make an independent review of any questions of law." (*Rand, supra,* 206 Cal.App.4th at pp. 574–575.)

I. *Child Custody Evaluations*

The Board challenges the trial court's finding that petitioner's declarations were not child custody evaluations and petitioner therefore should not be judged by the standard of care applicable to psychologists who prepare and submit child custody evaluations.

A. *Extra-Record Evidence*

The Board objects to the trial court's statements that no "Family Law judge in this court [would] mistake [petitioner's declarations] for, the extensive and detailed 'custody evaluations' " of rule 5.220, and that "courts often receive these sorts of comments and input from treating professionals." The Board argues this constituted improper reliance on extra-record evidence; improper judicial notice of the court's own experience and opinions, taken without sufficient notice; and improper augmentation of the administrative record. The Board also argues the issue of how a family court judge would perceive petitioner's declarations is not relevant.

We need not decide if there was error because any error was harmless.[6] Rule 5.220(e) sets forth a lengthy list of elements that must be included in custody evaluations, for example, an explanation of the evaluation's purpose, scope, cost, and payment responsibility, and a summary of the data gathering procedures and time spent. Petitioner's recommendations plainly do not comply or attempt to comply with this list. Moreover, child custody evaluators are appointed by the court (rule 5.220(c)(1)); petitioner was not appointed here. At oral argument, counsel for the Board conceded petitioner's declarations were not custody evaluations. Any error by the trial court in relying on its own experience in identifying child custody evaluations was harmless. (*Thornbrough v. Western Placer Unified School Dist.* (2013) 223 Cal.App.4th 169, 191, fn. 20 (*Thornbrough*) [finding error in trial court's reliance on evidence in administrative mandamus proceeding harmless]; Evid. Code, § 353.)

We also find no prejudice in connection with the trial court's finding that the standard of care applicable to psychologists conducting custody evaluations did not apply to petitioner's declarations. Indeed, this finding logically follows from the prior finding that petitioner's declarations were not child custody evaluations. We note Shields testified that custody evaluators were not the only parties to make custody

---

[6] Because of this conclusion, we also need not decide whether the Board forfeited this argument.

9

recommendations to a court, indicating that the standard of care for custody evaluations does not apply every time a custody recommendation is made. Again, any error by the trial court in relying on its own experience was harmless. (*Thornbrough, supra,* 223 Cal.App.4th at p. 191, fn. 20.)

B. *Shields' Testimony*

The Board next argues the trial court could not reject Shields' uncontradicted expert testimony regarding the standard of care.

" '[A]s a general rule, "[p]rovided the trier of fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. [Citations.]" [Citation.] This rule is applied equally to expert witnesses.' " (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632 (*Howard*).) The Board cites authority holding, however, that "when the matter in issue is within the knowledge of experts only and not within common knowledge, expert evidence is conclusive and cannot be disregarded." (*Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278, 313.) This "*exceptional* principle requiring a fact finder to accept uncontradicted expert testimony as conclusive applies *only* in professional negligence cases where the standard of care must be established by expert testimony." (*Howard, supra,* at p. 632.) We will assume without deciding that the principle extends to professional discipline cases involving allegations of negligence.

Under these cases, the trial court was bound by Shields' testimony describing the substance of the standard of care for psychologists submitting custody evaluations. However, the Board cites no authority providing the trial court was bound to find that this standard of care applied to a psychologist who did not submit a custody evaluation. Accordingly, because the trial court concluded petitioner's declarations were not custody evaluations, it was not precluded from finding that the standard of care governing custody evaluations did not apply.

II. *Psychological Characteristics*

The Board next argues that, even if petitioner's declarations were not custody evaluations, section 9.01(b) sets forth a general standard of care applicable to all

10

psychologists.  The Board contends (1) the Board decision made sufficient findings regarding psychological characteristics, and (2) these findings were supported by the weight of the evidence.  We agree with the first contention but reject the second.

The trial court found the Board decision failed to "identify the portion(s) of the recommendations that seek to describe the child's 'psychological condition.' "  In rendering adjudicatory decisions, administrative agencies " 'must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order.' " (*Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 516.)  However, "[t]he findings do not need to be extensive or detailed.  ' "[W]here reference to the administrative record informs the parties and reviewing courts of the theory upon which an agency has arrived at its ultimate finding and decision it has long been recognized that the decision should be upheld if the agency 'in truth found those facts which as a matter of law are essential to sustain its . . . [decision].' " ' (*Ibid.*)  The Board decision quoted section 9.01(b) and petitioner's declarations, noted the declarations "contain recommendations to the family court concerning the custody of Child," and found "[i]t was established by clear and convincing evidence that [petitioner] was grossly negligent in providing an opinion to the family court concerning the custody of Child, in that it was an extreme departure from the standard of care of licensed psychologists."  These findings are sufficient for us to bridge the analytic gap: the Board decision found that the custody recommendation constituted or impliedly contained an opinion about Child's psychological characteristics.[7]

However, we conclude this finding was against the weight of the evidence. Although Shields testified petitioner's declarations contained opinions about the psychological characteristics of Child, Shields conceded there was no definition of psychological characteristics "that is unique to psychologists."  "Characteristic" is defined as "a distinguishing trait, quality, or property."  (Merriam-Webster's 11th

---

[7] Petitioner does not argue on appeal the Board decision was not supported by adequate findings; instead, he argues the Board decision's findings regarding psychological characteristics were not supported by the weight of the evidence.

11

Collegiate Dict. (2004) p. 207; see also American Heritage Dict. (4th ed. 2000) p. 312 ["A feature that helps to identify, tell apart, or describe recognizably; a distinguishing mark or trait."].)[8]

Two judicial opinions provide guidance on the scope of "psychological characteristics" as set forth in section 9.01(b). In *Rand,* a psychologist testified in a child custody proceeding that the child, whom he had not interviewed, "suffered from parental alienation syndrome." (*Rand, supra,* 206 Cal.App.4th at pp. 572, 589.) The Court of Appeal had little difficulty concluding this constituted "an opinion of the psychological characteristics of the child" in violation of section 9.01(b). (*Id.* at p. 589.) *Rand* contrasted the facts of that case to those of *In re Kelly* (2009) 158 N.H. 484 [969 A.2d 443]. (*Rand, supra,* at p. 589.) In *In re Kelly,* a psychologist provided therapy services to the father in a custody dispute.[9] (*In re Kelly*, at p. 485.) The psychologist then submitted a report to the court, recommending the court "[i]ncrease [the father's] visitation with daughter, both [father and daughter] would grow from the interaction." (*Id.* at p. 486.) The New Hampshire Board of Mental Health Practices concluded the psychologist violated section 9.01(b). (*In re Kelly*, at p. 488.) The New Hampshire Supreme Court held "that the Board erred in its interpretation and application of the APA Code of Conduct to the circumstances of this case." (*Id.* at p. 491.) The court stated that section 9.01(b) "applies only if Dr. Kelly provided an opinion of a psychological characteristic of an individual other than [the father]. . . . Assuming, without deciding, that the Board could reasonably have found that the recommendation to '[i]ncrease visitation with daughter,' and the statement that 'both would grow from the interaction,' did in fact provide an opinion as to the daughter, the Board's ruling failed to address how

---

[8] Because petitioner's declarations were not custody evaluations, we disagree with the Board's contention that the APA custody evaluation guidelines should inform the definition of "psychological characteristics" in this case.

[9] The services were rendered in connection with a court order that the father complete a psychological evaluation and present evidence that he had addressed anger and parenting issues. (*In re Kelly, supra,* 158 N.H. at p. 485.)

this recommendation constituted an opinion of a psychological characteristic of the daughter such that an examination of the daughter would be required pursuant to the APA Code of Conduct." (*Id.* at p. 493.)[10]

The instant case is distinguishable from *Rand,* in which a psychologist testified to a specific, distinguishing psychological condition suffered by an individual—indisputably a psychological characteristic. Instead, the Board identified only petitioner's recommendation that Father have 50 percent custody as grossly negligent conduct. We decline to find that a bare custody recommendation—which does not set forth a distinguishing trait regarding the psychology of the minor—constitutes an opinion on the minor's psychological characteristics.

In this appeal, the Board points to other statements in the declarations: Child needed both parents involved in his life "especially as he moves deeper into adolescence"; that this was "especially important" for Child "as a special needs child"; that any attempt to block either parent from frequent contact with Child would "be destructive to all parties"; and that Child "needs the close relationship with his father to continue as he moves deeper into adolescence if he is to mature properly." These are fairly general statements that are broadly applicable, in contrast to the identification of a distinguishing psychological condition in *Rand*. Petitioner explained that these opinions were based in part on his "knowledge that an adolescent needs both parents to interact with in the course of his individuating, and developing," and on studies discussing the impact of divorce on children. As the Board decision found, petitioner held a "general belief that equal custody is in a child's best interest." Under *Kelly* and *Rand*, these statements are not opinions on the minor's psychological characteristics.

---

[10] The Board distinguishes *In re Kelly* on the ground that the psychologist expressly limited his opinion and recommendations. However, such a limitation is not relevant to the definition of "psychological characteristics." It is only relevant to the question of whether, if an opinion of such characteristics is being rendered without adequate examination, the psychologist " 'appropriately limit[s] the nature and extent of their conclusions or recommendations' " as required by section 9.01(b). (*In re Kelly, supra,* 158 N.H. at p. 491 [quoting section 9.01(b)].)

III. *Field of Competence*

The trial court found petitioner's declarations were not custody evaluations and, therefore, he was not practicing as a forensic psychologist and did not practice outside his field of competence. The Board points to contrary evidence in the record, but our review is limited to whether the trial court's decision was supported by substantial evidence. (*Rand, supra,* 206 Cal.App.4th at pp. 574–575.) As we have discussed above, the trial court's finding that the declarations were not custody evaluations is amply supported by substantial evidence. The declarations themselves, as well as petitioner's explanatory statements, support the trial court's finding that they "described the therapeutic context in which Petitioner counseled the couple for many years, and the limited observation of the couple's interaction with their son."[11] Such statements are squarely within petitioner's expertise as a marital therapist. The trial court's finding that petitioner did not practice outside his field of competence is supported by substantial evidence.[12]

## DISPOSITION

The judgment is affirmed. Petitioner is awarded his costs on appeal.

---

[11] The Board challenges this characterization of the declarations, arguing the statement in one of the declarations that petitioner "ha[s] had extensive opportunity to evaluate [Mother and Father's] relationship with each other, as well as with their son, [Child]" implies petitioner professionally evaluated Child. When read in the context of both declarations—which clearly state petitioner has seen Mother and Father in marital counseling sessions and has "observed each of them many times as they interacted with their son [Child] in the waiting area of my office"—we disagree that the statement is misleading.

[12] This conclusion renders it unnecessary for us to decide petitioner's contention that the Board decision "invades the exclusive power of the judiciary to regulate and determine the admissibility of evidence in family law courts" and "directly conflict[s] with the statutory rights of litigants." We also need not decide the parties' dispute regarding the Board decision's assessment of fees against petitioner.

14

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.